# WENDELL v. THE MAYOR, &c. OF TROY.

December, 1868.

Affirming 39 *Barb.* 329.

A municipal corporation is liable in an action for negligence in the construction of a work under a street undertaken by an individual for private benefit, where the work is done under permission of the corporation, with a condition that it is to be done under direction of a proper officer of the corporation, and no such supervision is bestowed by them upon it.

The construction, beneath the streets of a city, of drains, by private owners, to connect their premises with the sewers, is not an unauthorized use of a highway, which renders the individual making it liable for all damages resulting. The liability of either the private owner or the city corporation, in such a case, depends on the question of negligence or improper construction of the drain.

If the corporation consented to the making of the drain under the supervision of their officer and have agreed to exercise such supervision, they are liable to any third person injured by a defect in the structure.

The fact that the imperfection was of a secret or hidden character, does not exonerate them, if it might have been detected by proper supervision of the work.

James V. Wendell sued the city of Troy to recover damages sustained by falling into a drain or sewer in a street of the city, while driving over it; defendants having given permission to an individual to construct the drain.

The drain in question was constructed by one Mrs. Birge, the owner of a house and lot on River-street, in the city of Troy, in order to connect her cellar with a drain in Hoosick-street, in said city. Soon after the work was commenced, it seems to have been stopped by some authority, and its direction altered, and upon application to the common council, authority was given to continue it by a resolution to that effect, with a condition annexed to the resolution, that the "work was to be done under the direction of the city commissioner."

There was no direct proof given as to the manner in which the work was done; so far as external appearances indicated, the drain was filled up in the usual manner; the earth was rounded up and seemed to present a substantially even surface.

Wendell *v.* Mayor, &c. of Troy.

The fact that it was in progress was open and notorious; it was known to some of the city authorities that it was in the course of construction, but no attention was paid to it, and no directions in respect to the mode of its construction, or the character of the work in any respect, were given by any of the city officers. That the work was defectively constructed, appeared conclusively, by the casualty which happened to the plaintiff, which could not have occurred if the drain had been built, or the earth replaced and pounded as it should have been. There was no question of concurring negligence on the part of the plaintiff; and the case being one of sheer negligence on the part of some one engaged in the construction of the drain, the question was whether the city government was responsible in this action for negligence in the construction of a work for private use and benefit, where such work is built under permission of the public authorities of the city, with a condition that it is to be done under the direction of the appropriate city officer, and where no supervision or direction whatever has been given or bestowed in respect to it.

In his charge to the jury, the judge instructed them to inquire, first, whether the drain was negligently and improperly constructed; second, whether the plaintiff was injured by such negligence, and without any contributing negligence on his part; and, third, whether the drain was constructed by the authority and under the supervision of the common council, and in respect to this point, he charged that the resolution of the council was evidence of their consent, and that it was the duty of the council to send a competent officer to see that the drain was properly constructed.

To this third proposition there was an exception.

The plaintiff had a verdict.

*The supreme court,* at genera. term, refused a new trial, and placed their decision, to some extent, if not wholly, upon the doctrine that where a municipal corporation give to an individual permission to construct works in or under a highway —such as a drain—for his own benefit, the corporation are liable for injuries resulting to third persons, from the negligent construction of the work, or, indeed, from any defect in

the street caused by the structure. The corporation should not authorize such diversions of the highway to private uses; and doing so without securing safety is negligence. Reported in 39 *Barb.* 329.

Defendants appealed.

*W. A. Beach* for defendants, appellants, insisted that it is lawful for citizens to connect their drains with public sewers, and that defendants were not liable if they had no notice of the secret or hidden defect in the construction; that there was no evidence of defective construction, and that a defect could not be presumed from the fact of injury. Holl *v.* Utica, &c., 12 *N. Y.* (2 *Kern.*) 236 ; Parker *v.* Mayor, &c., 8 *N. Y.* (4 *Seld.*) 222 ; Kelly *v.* Mayor, 11 *N. Y.* (1 *Kern.*) 132 ; Storrs *v.* Utica, &c., 17 *N. Y.* 109 ; Mayor of Albany *v.* Cunliffe, 2 *Id.* 165 ; Barton *v.* Syracuse, 36 *Id.* 54. See also 38 *Penn.* 355 ; 22 *Wend.* 446 ; 5 *Duer*, 677 ; 9 *N. Y.* 456.

*John K. Porter*, for plaintiff, respondent, insisted that the duty of the defendants to keep the streets safe was absolute. Davenport *v.* Ruckmann, 37 *N. Y.* 568 ; citing also 17 *Id.* 104 ; 29 *Id.* 591 ; 36 *Id.* 39 ; 32 *Id.* 422 ; 18 *Id.* 82.

BACON, J. [After stating above facts.]—I do not think it important to recapitulate in detail. the several rulings and modifications stated by the court. Taken as a whole these propositions contain the theory, and present the principles upon which, as the defendant's counsel insisted, the case rested, and by which it was to be controlled. With some amplifications and changes of phraseology, they embrace substantially the following propositions, claimed by the counsel as governing this case, and which he was entitled to have charged :

1. That, if the jury found that the drain was constructed by a private citizen, under the authority of the resolution of the common council, and the work was not done or superintended by defendant, or any of its officers, and the street was not out of repair at the place of the accident, the defendant is not responsible for any imperfection in the construction of the drain. This instruction the court refused, and charged

that, if the defective construction of the work made it unsafe, in fact, to pass on the street, the defendant was responsible for injury to a traveler who is himself guilty of no negligence. The proposition of defendant's counsel affirmed, that if the street to outward appearance was safe and secure, it was enough to protect the defendant, although, in point of fact, from a hidden defect not patent to the senses, it was entirely unsafe. The same proposition was subsequently repeated, slightly modified in terms, but to the same effect, and the court gave the same response.

2. That, under the evidence, the defendant was not charged with any duty in respect to directing or superintending the construction of the drain. This the court declined to charge; and, to the next request, that if any injury happened by a hidden imperfection not known to defendant, and which reasonable diligence could not discover, the defendant was not liable, the court assented as a general principle, but added, that, if the drain was constructed under the resolution, the defendant was bound to see to its proper construction.

3. The defendant further insisted, that the plaintiff was not entitled to recover without proving that defendant, through some or one of its officers, was guilty of negligence, by which the plaintiff was injured. To this proposition the court answered, that it was true generally, but that the city was guilty of negligence in not sending a competent and proper officer to oversee the work, if they omitted this duty. And the judge subsequently charged, that the common council must either have the supervision of the work, or an opportunity to supervise it, and that the latter would be the same thing.

These propositions, in their condensed form, present the theory of the defense and the grounds on which it is claimed there should have been no recovery in this case. They assert, that the city was charged with no duty whatever in respect to the construction of the drain, inasmuch as it was the work of a private citizen, by permission given therefor; and that, if there was no imperfection apparent from natural observation, there was no liability for any hidden defect; that the defendant was not charged with any duty in regard to superintending or directing the work; and, finally, that the plaintiff

could not recover unless he proved affirmatively that the defendant, through some of its authorized agents, was guilty of actual negligence occasioning the injury.

The charge as given, together with the requests and refusals or qualifications, maintained in substance the converse of all these propositions. It held, that a duty was imposed upon the defendant, as a municipal corporation, to keep the streets and highways of the city in suitable repair, so as to render them safe for the traveler; that, although the work in question was one undertaken for private use and benefit, yet the city was not thereby discharged from the duty of oversight and direction, and responsibility for proper construction, especially as, in the resolution giving permission to perform the work, it was provided, that it was to be done under the direction of the proper city officer; that it was the duty of the corporation to send a proper and competent person to oversee the work; and, finally, that it was not enough, to relieve the defendant from liability, that there was no external indication of imperfection in the work which diligence could discover, provided the street was, in point of fact, unsafe, and although this might arise from a hidden defect not cognizable by outward observation.

. This was, in my judgment, a correct exposition of the law, as it has been settled by the weight of authority running through a series of decisions in the courts of this State. Those authorities have been carefully collected in the able opinion of Mr. Justice HOGEBOOM, delivered on the decision of this case at the general term, and their general result accurately stated, with the exception of one point from which I desire to express dissent. He states, as a proposition of law, that the use of the public streets of a city by an individual for the construction of drains for his private benefit is unauthorized, and makes the party liable for any damages resulting from such unlawful appropriation. He goes still farther, and maintains, that the corporation is responsible, because it was a breach of duty for it to allow the street to be thus diverted to a private use, and this liability exists notwithstanding the work may have been done with care, because the thing itself was unlawful, and no amount of care or labor bestowed

upon the work could sanction such an illegal appropriation of the highway.

I may remark. that no such principle as this is necessary to the determination of this case, and it was not put to the jury in any such aspect. Indeed, it was assumed, that the authority which the resolution professed to import, was properly given, and the breach of duty on the part of the public authorities, was in not performing their necessary function in supervising and directing the work. I can not assent to the proposition, that it is unlawful for a citizen to use the public streets for the purpose of connecting his premises with the main sewers of the city. If he has obtained the proper authority, his right thus to use them is unquestionable. This has been expressly held in. Barton *v.* City of Syracuse, 37 *Barb.* 292, affirmed by this court in 36 *N. Y.* 54. So strongly is this held, that the court in the case cited, say " there is something very like a contract to be implied from the construction of a main sewer at the expense of adjacent property, that it may be used to drain that property by connecting it with the common sewer." But this does not of course absolve the party using the street for his convenience from the necessity of care in the construction of the work, nor the corporation from liability, through its remissness to respond in damages for any injury that may result from its negligent construction.

It is not important, as I have intimated, that the authorities should be collated which establish the principle on which the liability of the municipal corporation rests. This is the less necessary since the very recent decision of this court in Davenport *v.* Ruckman, 37 *N. Y.* 568. In that case an excavation had been made by the tenant of certain premises in the sidewalk opposite the same, so defectively that the plaintiff passing along the walk, fell into the excavation and was seriously injured. A recovery was had in an action against the owner of the premises and the city of New York, and this court affirmed the judgment. The work had been done by some former occupant of the premises, and the liability of the city was put upon the express ground of their obligation to see that the streets and sidewalks of the city were maintained and kept in good repair, and that if an injury occurred to any one,

through defect in the streets or walks, the city was responsible, whether the injury arose from some act done by the corporation, or from an omission of duty on its part.

In the opinion of Chief Justice Hunt, he notices the objection that the city has no absolute duty in regard to keeping the streets in repair, and is only responsible for the results of their own imperfect execution of a work undertaken and carried on by them, and disposes of it, by saying that it was not a new suggestion, and had been settled by the cases he cites, and which had put the liability for acts of omission as well as of commission beyond further discussion.

The ground taken by the counsel for the defendant and insisted upon at the circuit in the proposition in which he asked to have charged, to wit, that the defendant was not liable for any unskillfulness or imperfection in the construction of the drain, provided there was no imperfection apparent from external observation, is pertinently answered by the judgment of this court, in Congreve v. Smith, 18 N. Y. 79, 82, that it is as much a wrong to impair the safety of a street by undermining it, as by placing objects upon its surface, and that the nature of the liability is not varied, whether the fee of the land on which the easement exists is in the corporation, or in him by whom the act complained of was done.

The exceptions to evidence received upon the trial were not well taken. The questions asked of both the mechanical and medical experts, were proper and are sanctioned by authority. Conrad v. Trustees of Ithaca, 16 N. Y. 158, 173 ; Matteson v. N. Y. Central R. R. Co., 35 Id. 487, 492.

I think the judgment should be affirmed.

Woodruff, J.—I do not understand that the duty of the defendants to keep the streets of the city in proper repair, and the permanent road-bed in a safe condition for use by the public in passing and repassing, is called in question on this appeal.

To what extent that duty involved liability for accidents, arising from temporary obstructions therein from erections made by third persons, or the presence of extraneous matter, which question arose and was considered in Griffith v. Mayor, &c. of N. Y., 9 N. Y. 456, is not material to this case.

The main question is here, whether, admitting the defendants' duty as above stated, the defendants are liable for an injury resulting from an unsuitable construction of a sewer in or across a street, which renders it unsafe, where the evidence shows that such sewer was constructed by a private citizen, under authority of a resolution of the common council permitting the same, in order to connect the premises of the citizen with the main sewer in a neighboring street, "under the direction of the defendants' city commissioner?"

It would not be accurate to say that the construction of sewers through the streets of a city for the promotion of cleanliness, and the removal of water, otherwise running over the surface, or becoming stagnant in low grounds, or rendering dwelling-houses and cellars damp and unwholesome, stands upon the same ground in the law as excavations made for the private use of an individual, to promote his convenience, and having no relation to the public health or general well-being of the citizens at large.

And when main sewers are constructed by the public authorities, the use of them by the citizens in accordance with the purpose of their construction, by connecting their dwellings with them, is only bringing into practical effect that purpose and aiding in securing the general benefit, which the completed system promises to the health and comfort of the inhabitants.

The use of the streets of a city by making them the lines or routes of sewers, and the various branches thereof, is not a misappropriation of the highway, but a use long recognized as within the purposes, or at least entirely consistent with the purposes, for which the easement subsists, and may be declared to be more obviously so than the laying of gas-pipes, and water-pipes for the supply of the inhabitants with light and water.

Such a use is not, therefore, to be treated as involving the same legal consequences as an unauthorized excavation for private purposes above adverted to; and the cases of Congreve *v.* Smith, 18 *N. Y.* 79 ; Congreve *v.* Morgan, 5 *Duer*, 495, 18 *N. Y.* 84 ; and Dygert *v.* Schenck, 23 *Wend.* 446, do not necessarily determine the present. In those cases, the excavation of

the public highway was deemed without authority, and to have been made wholly at the peril of the party making it; and therefore, such party was held liable for an injury to an individual resulting therefrom, irrespective of any question of care, skill, or diligent precaution. The defendants there had no right to make the excavation; and if they did so, they were held unqualifiedly liable for accidents resulting therefrom.

Not so here. It is lawful for the city to construct sewers in the line of the streets for the promotion of the public health and comfort, and, under proper regulations, it is competent to permit the citizens to connect their premises therewith by drains leading from their dwellings.

The public sewers are thereby, and only thereby, made efficient for the most important purposes of their construction.

The case of Barton *v.* City of Syracuse, 36 *N. Y.* 54, recognizes these rights and declares the duty of the municipal corporation to keep the sewers in repair. In most conclusive reasoning, it shows the importance of the connection of private dwellings therewith, and in the opinion it is added, " it becomes the right of every one occupying premises along the line, under proper restrictions for general protection, to use it by inserting a drain from his lot," and, "it seems, therefore, that the right of the plaintiff to connect his drain with the public sewer is placed beyond possible question."

The defendants, therefore, were not in the violation of any right, public or private, when they gave permission for the construction of the drain in question.

The parties constructing the drain, under a permission given by the defendants, were doing only what they might legally and rightfully do.

Neither, therefore, can be charged, on the mere ground that having without authority interfered with the public highway, they are responsible, at all events, for the consequences.

The question of liability, as a question of law in such cases, is a question of care and diligence, or of negligence. It is like the question, again and again presented to our courts, in actions against railroad companies, who are authorized by law to run their steam engines and trains in or across public highways; they are liable for accidents, if liable at all, not because

they run their trains in or across such highway, but because, in the exercise of their own legal right, they are guilty of some negligence or omission in the performance of their duty to so use their own that others may not be injured.

In the present case, the liability of the defendants, if they are liable at all, is founded upon some negligence of theirs in the matter of the construction of the drain, or if such construction had made the street unsafe, then for some neglect of their general duty to keep the street in safe condition.

The opinion of DENIO, Ch. J., in Conrad v. Trustees of Ithaca, 16 N. Y. 158, 169, where he comments upon Hickok v. Village of Plattsburg, and compares it with the case then at bar; brings into view a distinction apt to this case. "In the case of Plattsburg, the trustees neglected to fill up the ditch which a wrong-doer had excavated in the street. It was held to be a corporate duty to keep the street in a safe condition. In this case the trustees built a bridge, which *they had a right to do ;* but in doing it they proceeded negligently and unskillfully, and the plaintiff suffered an injury on that account." The village was held liable on that ground.

I think, therefore, that the proposition apparently sanctioned in the opinion of the court below, that "the liability is absolute and complete, notwithstanding any degree of care and diligence, because the structure was, under any circumstances, unauthorized," unsound, and the cases referred to do not apply here.

The construction of the sewer, or of the drain leading thereto, was not unlawful; and therefore the question, and only proper test of the defendants' liability, is, were the defendants in fault in the manner of the construction, or in not causing the defects to be remedied?

Notwithstanding this qualification of the opinion expressed at the general term, as I understand that opinion, I think the questions submitted to the jury at the trial were the true test of liability, and that in this respect no error was committed.

These questions, and the liability depending on the answer the jury might give thereto, were as follows:

1. Was the drain negligently and improperly constructed?

2. Was the plaintiff injured by reason of such defect and

insufficiency, without any contributing negligence on his own part?

3. Was the drain constructed by the authority, and under the supervision of the common council?

The jury were instructed, if all of these questions were answered in the affirmative, the plaintiff is entitled to recover.

It will be seen that here the question of liability is made to turn solely on the negligent or improper construction of the drain, and the responsibility of the defendants therefor.

No matter how even and apparently safe the external appearance of the street was, from the time of the completion of the street until it fell in under the weight of the plaintiff's wagon. No matter whether the defendants had actual notice of the defects in the construction. They were declared liable if the drain was constructed by the authority and under the supervision of the common council.

And this responsibility was further explained by the instruction, that the resolution of the common council was evidence of their consent, and it was their duty to send a competent officer to see that the drain was properly constructed; and subsequently, that an opportunity to exercise such supervision was equivalent to actual supervision.

I think that in this there was no error. It is not and can not be insisted that such a drain could not by ordinary care and skill have been so constructed as to be perfectly safe.

The fact that it was not so constructed is found, and is, I think, not questioned.

The resolution of the common council which was given in evidence, is a distinct permission to the owners of the house, No. 456 River-street, to lay the drain, " the work to be done under the direction of the city commissioner."

Now, however true it may be that the corporate authorities are not under any such responsibility as insurers of the safe condition of the streets, that they become instantly liable' for defects the moment they occur, and although they are caused by the act of a wrong-doer, and without any previous notice to them, calling their power and duty to provide for their safe condition into exercise, it is clear, I think, that when they consent that the public street may be excavated and a drain in-

troduced, they have notice that an act is to be done which directly invokes their power and duty, and calls for its exercise in behalf of the public, to see to it that the property of those who have a right to pass and repass is not endangered by a hidden trap which superficial observation would not disclose; and supervision of the work to that end was therefore incumbent upon them.

To the suggestion, that it should nevertheless appear that they were notified that the owners were about to begin the work and were actually constructing the drain, it will suffice —passing by the evidence, that was not contradicted, tending to establish that the defendants' street inspector was more than once at the place of excavation during the progress of the work,—to say, that this work was not of a description that it could be suffered to go on from day to day from the beginning to its completion, and the defendants then claim, that, although it was done by their consent, they were so remiss in the discharge of their general duty of supervision of the streets that they did not discover it. Such a statement only aggravates their neglect. When a case in other respects similar shall arise in which the work consented to can be done so speedily, that consistently with the faithful performance of the defendants' duty to supervise the condition of the streets, it may be completely finished and all defects concealed from a careful examination without the knowledge of the city authorities that it has been begun, a different question will be presented. In such a case the instruction which was asked by the defendants on this trial might be proper, viz., "that if any injury happened to the plaintiff by reason of a hidden imperfection in the drain not known to the defendants or to either of their officers, and which reasonable diligence could not discover, the defendants are not liable."

But in its application to this case, such an instruction was not called for; if it was intended thereby to submit to the jury, that reasonable diligence in the construction of the drain, or in the supervision thereof, could have been exercised by the defendants, and yet the imperfection be of such secret or hidden character as not to be detected, there was no ground therefor in the evidence.

If it was meant, that, if, after the drain was completed, the imperfection was so concealed that the defendants did not know of its existence and could not by reasonable diligence discover it, the defendants are not liable.; the refusal so to charge was correct, because all that might be true and yet the defendants have wholly failed in their duty to see to the manner of the construction while it was in progress.

I think the judgment should be affirmed.

All the other judges concurred in affirming the judgment, except GROVER, J., who was understood to doubt.

Judgment affirmed, with costs.