ISAAC SHARTLE

*vs.*   .

## CITY OF MINNEAPOLIS.

In an action against a city for the recovery of damages sustained by reason of a defective bridge, the complaint contained an express averment that the bridge was within the corporate limits, and situate upon a street or highway over which passed a large amount of travel. *Held*, that it is to be inferred from the use of the terms "street or highway" in the connection in which they stand, that the bridge was situated upon a public street or highway in said city.

If the answer of defendant avers or confesses a material fact omitted in the complaint, the defect in the complaint is thereby cured.

A municipal corporation having the exclusive care, supervision, and control of the streets and bridges within its limits, if the means for performing the duty are provided or placed at its disposal, is obliged to keep them in a safe condition, and if it unreasonably neglects this duty, and injury results to any person by this neglect, the corporation is liable for the damages sustained.

In an action against a municipal corporation for damages for an injury caused by a defective bridge, it is not necessary for the plaintiff to plead, in the first instance, that the means for repairing the bridge was provided for or placed at the disposal of the defendant, unless by the terms of the act of incorporation the possession of the means is made a condition precedent of the defendant's liability. In such an action, when the charter is pleaded by its title and approval under our statute, the court will take judicial notice of all the provisions of the charter without further averment; and when by the charter the power to levy a specific tax for the purpose, *inter alia*, of constructing and maintaining bridges is conferred on the defendant, it is sufficient to impose upon the defendant the duty of keeping in safe condition a public bridge within its limits.

Although a limitation is fixed upon the amount of tax to be levied in any

Shartle v. City of Minneapolis.

one year, it will be presumed, *prima facie,* at least, that the means provided or placed at the disposal of the city were sufficient.

It was not erroneous for the court to charge at the request of plaintiff that, " it is the duty of the city of Minneapolis to keep bridges upon its public streets and thoroughfares which it keeps open for the general travel of the public, in a safe passable condition, and reasonably secure against all danger of accident," without further qualification.

It was not erroneous to charge that, " to show an acceptance by the public, binding upon the city, it is not necessary to show any formal action of the council to that effect If the jury find from the evidence that the city of Minneapolis, or its predecessor the town of Minneapolis, expended money in repair of the bridge, and assumed and exercised control and supervision of the same, and that it was upon a public thoroughfare in the city, this is evidence tending to show an acceptance and assumption of the bridge by the city."

An instruction which is fairly liable to a construction which might mislead the jury as to a proposition of law applicable to the case, may properly be denied

An instruction which is not relevant because no issue is raised as to the fact upon which it is based, may properly be denied.

An exception generally to the charge of the court, cannot be sustained.

The district court may decline to receive a request from counsel to charge the jury upon a particular point not submitted until after the entire charge of the court had been closed, when the party has not been misled, and there is no abuse of discretion.

Facts considered as to whether the injury complained of, was the natural and proximate result of a defective bridge.

A verdict will not be disturbed on the ground of excessive damages, if nothing appears in the case from which it can be reasonably inferred that the jury in determining the damages were mistaken, or actuated by passion, prejudice, or any wrong motive.

The plaintiff brought this action in the district court for Hennepin county, to recover damages alleged to have been suffered by him in consequence of injuries to his wife, caused by falling from a bridge within the corporate limits of the city of Minneapolis, and which fall he alleges was in consequence of defects in such bridge, which the defendant had neglected to repair.

A verdict was rendered for the plaintiff for four thousand

dollars.  The defendant moved for a new trial, and from the order denying such motion appeals to this court.  The grounds upon which such motion was made, and the points made upon the appeal are sufficiently stated in the opinion.

J. M. SHAW and A. H. YOUNG, for Appellant.

LOCHREN & MCNAIR, for Respondent.

*By the Court.*—MCMILLAN, J.—This is an action to recover damages for injuries to the plaintiff's wife by reason of a defective bridge.  At the commencement of the trial the defendant objected to any evidence being given under the complaint in the action, and moved for judgment of dismissal upon the pleadings, on the ground that the complaint does not state facts sufficient to constitute a cause of action.  The objection was overruled, and the motion denied, to which the defendant's counsel excepted.  In support of his exception the defendant's counsel urges several objections to the complaint.

1. It does not allege that the bridge was a public highway, or that it was in a public highway.

2. There are no facts pleaded showing that there was any duty resting upon the defendant to keep the bridge in repair. The mere allegation that it was the duty of the defendant to do so, is bad.

3. The complaint does not show that defendant built said bridge, or has maintained it or owned it.

4. The complaint does not allege that the defendant had the necessary funds or means with which to repair the bridge.

In disposing of this question we will consider together the first and third objections specified.  The only allegations in the complaint, so far as we discover, bearing upon the character of the bridge in question as a public highway, are as follows:

"That on or about the 26th day of June, A. D. 1868, there existed a certain bridge in said city, and over what is called Bassett's creek.   *   *   *   *   That it was the duty of said city to make and keep in good repair said bridge as well as all other bridges within its limits; that said bridge was situate upon a street or highway over which passed a large amount of travel."

This is an express averment that the bridge is within the corporate limits of the city, and situate upon a street or highway over which passed a large amount of travel.

We think it is to be inferred from the use of the term street or highway in the connexion in which it stands, that the same was a public street or highway. *Farrant vs. First Div. St. P. & P. R. R. Co.*, 13 *Minn.* 311.

But conceding that the complaint is not as full and accurate as it might be, a further answer to the objections is, that the defendant, in its answer which is to be considered in connection with the complaint, admits "that there was at the time alleged in said complaint, within the corporate limits of the city of Minneapolis, a certain bridge,   *   *   *   which said bridge was known as the First street bridge, and which upon information and belief defendant alleges was the same bridge mentioned in said complaint.

*      *      *      *      *      *      *      *      *      *

" Defendant further alleges, that long prior to said 26th day of June, 1868, to-wit : more than one month prior thereto, the common council of the said city of Minneapolis had caused the said bridge to be securely fenced up, and stopped at each end, and had taken and used all reasonable and necessary means and precautions to prevent the same being used by the public, which said fences and obstructions to the use of the same remained and were at the approaches to said bridge up to and on said day, and at the time of the pretended accident, and

that said council had long prior thereto instituted, and were at said time prosecuting with all reasonable dispatch and diligence, and as fast as said city was able, measures for the rebuilding of said bridge."

The averment that the city council used the means necessary to prevent the public from using the bridge, in connection with the averment that the council had taken measures for rebuilding the bridge, is an admission of the assumption by the city of the care and control of the bridge in question. *Mayor vs. Sheffield,* 4 *Wallace,* 189.

If, therefore, the complaint were defective in the points embraced in the objections under consideration, the defect is cured by the answer. 1 *Ch. Pl.* 671; *Gould's Pl. ch.* 3, § 192.

The second objection specified is, " that there are no facts pleaded showing that there was any duty resting u⁻on the defendant to keep the bridge in repair."

The complaint avers the incorporation of the uefendant, and pleads the act of incorporation by stating its title, which under our statute is sufficient; we are, then, charged with judicial notice of all the provisions of the defendant's charter, without further averment. Section 1 of ch. 6 of the act of incorporation is as follows: " The common council of said city shall have the care, supervision and control of all the highways, bridges, streets, alleys, public squares and grounds within the limits of the city, and shall have power to build and keep in repair bridges, lay out, open, alter and vacate public squares, highways, streets, lanes and alleys, and widen or straighten the same, and take grounds for the site of public buildings, subject to the assessment of damages as hereinafter provided." *Sp. L.* 1867, *p.* 70.

Sec. 2, of ch. 5, of the charter is as ollows: " The common council shall have power to levy a special tax upon all the taxalle property in the city or of the different wards of the

Shartle v. City of Minneapolis.

same for the purpose of constructing, maintaining bridges and culverts, and opening, constructing, maintaining and repairing roads, highways, streets and alleys; for the construction of reservoirs, cisterns, sewers, drains and street gutters and grading of streets and for other purposes conducive to good order and cleanliness and to protection against crime, disease and fire. Provided, that such taxes shall in no year exceed six mills upon a dollar of the assessed valuation; and, provided further, that for the improvements in this section mentioned the common council shall have power to assess the tax to pay the same upon the ward or wards benefited by such improvement, in such manner and to such extent as the common council may think just and equitable." *Sp. L.* 1867, *p.* 68.

We think it needs no argument to show that by sec. 1, ch. 6, the city of Minneapolis, defendant, is invested with the exclusive care, supervision and control of all bridges, public and free to all passengers, situate within the corporate limits. We have already determined that it sufficiently appears that the bridge in question was a public bridge in said city. So far, therefore, as sec. 1 of ch. 6 is concerned, it was within the exclusive care and control of the city.

It is well settled that a municipal corporation having the exclusive control of the streets and bridges within its limits, at least if the means for performing the duty are provided or placed at its disposal, is obliged to keep them in a safe condition; and if it unreasonably neglects this duty, and injury results to any person by this neglect, the corporation is liable for the damage sustained.

*Russel vs. Men of Devon,* 2 *Term* 667; *The Mayor, &c., of N. Y. vs. Furze,* 3 *Hill* 612; *Conrad vs. The Trustees, &c., of Ithaca,* 16 *N. Y.* 159, *and note; Op. of Selden J. in West vs. Brockport; Shearman and Redfield on Neg. Sec.* 126; *Wendell vs. Troy,* 39 *Barb.* 335; *Same vs. same affirmed,* 4 *Keyes* 261; *Erie City*

*vs. Schwingle,* 22 *Penn.* 385, *and authorities cited; Weightman vs. The Corporation of Washington,* 1 *Black* 39; *Chicago City vs. Robbins,* 2 *Black* 418; *Wilson vs. The Mayor, &c., of* N. *Y.,* 1 *Den.* 595 (601); *Hutson and wife vs. The same,* 9 *N. Y. Rep.* 163. Unless, therefore, the 4th objection specified, to-wit: that "the complaint does not allege that the defendant had the necessary funds or means with which to repair the bridge," is well taken, the complaint is sufficient.

To this objection there are, in this instance, several answers

1 If the obligation of the city in regard to the bridge was a conditional one, the condition was not a condition precedent, unless made so by statute, but was a condition subsequent, and was, therefore, matter of defence to be pleaded by the defendant. *Shearman and Redfield on Neg.* § 133; *Erie City vs. Schwingle,* 22 *Penn.* 384; *Wendell vs. Troy,* 39 *Barb.* 329, 338.

2. Section 1 of ch. 6, which imposes the obligation, contains no exception or limitation. The duty enjoined by it is general and unconditional. Sec. 2, of ch. 5, which makes provision for taxation for constructing and maintaining bridges, &c., is entirely distinct and separate from sec. 1. So far, therefore, as the statute itself is concerned, sec. 2, of ch. 5, containing the power to tax, is not made a *proviso* or *exception* to sec 1, of ch. 6, and need not be noticed by the plaintiff, in the first instance. *Gould's Pl. ch.* 4, § 22.

3. But conceding, for the argument, that it was necessary for the plaintiff to plead, in the first instance, that the means to perform the duty required were placed at the disposal of the defendant, or were within its control, even then the objection cannot prevail, for the charter being pleaded by the plaintiff, we take judicial notice that by sec. 2, of ch. 5, power to tax for the purpose, *inter alia,* of constructing and maintaining bridges, was given to the city council, and the means were thus provided or placed at the disposal of the defendant for the re-

quired purpose. Notwithstanding the fact that a limitation is fixed upon the amount of tax to be levied in any one year, it will be presumed, *prima facie*, at least, that the means provided or placed at the disposal of the defendant were sufficient.

The objection to the complaint and motion to dismiss the action were properly denied, and the exception to the ruling cannot be sustained.

At the close of the testimony the plaintiff submitted to the court seven propositions of law, and requested that they be given to the jury as applicable to this case; all of which were given by the court as requested.

The defendant's counsel excepts to the first and fourth of such instructions, which are as follows:

" 1st. That it is the duty of the city of Minneapolis to keep bridges upon its public streets and thoroughfares which it keeps open for the general travel of the public, in a safe, passable condition and reasonably secure against all dangers of accident."

" 4th. Public streets, highways and bridges which belonged to the town of Minneapolis within the limits of the present city of Minneapolis became at the incorporation of the city the property of the city, and it became the duty of the city to keep such of them safe, passable and in repair as it permitted to remain open to the travel of the general public."

We infer from the defendant's brief, that the only objection to these instructions respectively are, that they should have embraced the qualification that in order to make it the duty of the city to repair and keep safe and passable the bridges, streets and highways of the city opened and kept open by it to the general public, the means to do so must be provided or placed at its disposal.

The instructions given embrace correct general statements of the law, and were not erroneous.

A further answer is that the means were provided and placed at the disposal of the city, as we have already seen, and no issue as to their sufficiency was raised or tendered by the defendant.

The defendant also excepts to the fifth and sixth instructions given by the court to the jury at the request of the plaintiff, and to the refusal of the court to instruct the jury in accordance with the first and second propositions submitted to the court by the defendant. We may dispose of them, as they are discussed by the defendant, together. The fifth instruction referred to defines what acts and circumstances were competent evidence tending to show a dedication to the public of a street, highway or bridge. The sixth instruction given is as follows: "To show an acceptance by the public, binding upon the city. it is not necessary to show any formal action of the council to that effect. If the jury find from the evidence that the city of Minneapolis, or its predecessor, the town of Minneapolis, expended money in repair of the bridge, and assumed and exercised control and supervision of the same, and that it was upon a public thoroughfare in the city, this is evidence tending to show an acceptance and assumption of the bridge by the city."

The first and second requests submitted by the defendant, and refused by the court are as follows:

"1st. In order to recover in this action the plaintiff must show that the bridge in question was on a public street or highway within the city of Minneapolis. Merely showing that the way upon which it was situated has been traveled and used as such street is not sufficient proof of this fact. It must be shown that it has been laid out and opened officially as such, or that it has been duly dedicated to the public as such.

"2d. The defendant is not liable in this action unless it is shown that either it or the town of Minneapolis built or main-

tained the bridge in question, or held it out to the public as a highway. The mere fact of its being on a street of the city, unless put there by the public authorities, is not sufficient to impose upon defendant the obligation to keep it in repair."

The instructions given were not erroneous; it cannot be inferred from them that a mere dedication by the owner, and a mere *user* by the public, were sufficient to charge the city, defendant, with the duty of keeping the bridge in question in a safe condition.

The first of defendant's requests is fairly liable to the construction, that the plaintiff must show that the bridge in question was on a public street or highway within the city of Minneapolis, and to show that the street on which it is situated is a public highway, it must be shown that such street has been laid out and opened officially, *i. e.*, by the public authorities, or that it has been duly dedicated to the public as such, and that such dedication cannot be established by proof that the same has been used and traveled by the public. This would be erroneous and the jury might have been misled. For this reason the exception to the refusal of the request must be overruled.

It is, perhaps, not necessary to discuss the merits of the second request submitted by the defendant. There would seem to be no issue raised as to the fact that the *locus in quo*, this bridge, was a public bridge; the answer of the defendant, as we have already seen, admits that the city had assumed the care, control and repair of the bridge, prior to the time of the accident to the plaintiff's wife.

The proposition, therefore, even if correct, was not relevant and was properly refused.

The statement of the court to the jury that the bridge in question was "admitted to be on the line of First street," is not ground of error.

If the answer does not fully admit it, it is abundantly proved by witnesses upon both sides of the case, and especially by Bassett, the defendant's witness. In addition to this, the statement referred to was a single expression in a somewhat extended charge of the court introducing several topics, and the exception was a general one to the charge. The exception was not sufficiently specific and cannot be sustained.

After the court had passed upon the points submitted by the attorneys of the parties respectively, and from those allowed in charge to the jury, and had delivered to the jury a general charge in the case, at the close of the entire charge the defendant submitted a further proposition, and requested the court to charge the jury in accordance therewith.

The court declined, at that time, to add anything further on that point, and declined to give the same as requested, to which refusal to charge the defendant by its counsel excepted.

The court might in its discretion properly refuse, as it did, to consider this request of the defendant, not submitted till after the charge had been closed.

The case seems to have been presented to the jury by the court with great impartiality, and the court had already charged the jury, that if prior to and up to the time of the happening of this accident the defendant was using reasonable and proper precaution and diligence to prevent the use of said bridge by the public, the defendant is not liable, and that the jury were to determine from all the facts and circumstances what the city did with reference to closing the bridge against public travel.

There was no abuse of discretion in this case, and we see no reason to suppose that any substantial injury resulted to the defendant from the action of the court. . *State vs. McCarty,* 17 *Minn. Ante.*

The attending physician was called as a witness, and it ap-

peared from his testimony that the plaintiff's wife was pregnant at the time of the accident; that she was subsequently delivered of the child, which was dead at the time of delivery. Certain questions were put to the witness touching the condition of the child in *ventre sa mere* at the time of the accident, and subsequently to the time of delivery, which were objected to by the defendant. The testimony shows that there was a malformation of the child, caused wholly by the fall of the mother, which affected the mother injuriously.

Whatever facts tend to show injury to the mother which were the proximate result of the accident, would be properly received in evidence, and on this ground the evidence was proper.

The rule of damages is that they must be the natural and proximate result of the act or omission complained of.

The bridge in question was an old one twenty to thirty feet high, one hundred and twenty-five feet long. It is very evident that it was in a bad and unsafe condition; the flooring, and many of the timbers, "except the up and down timbers," were rotten; the railing where it was broken was decayed the railing broke when the wagon struck it.

Only one of the horses was frightened, and Mrs. Shartle states that the other did not seem much disposed to back; the wagon uncoupling, the front wheels and team did not go over; and we think the evidence tends to show that the force with which the wagon was backed against the railing, would have been resisted by a sound, substantial railing, suitable for such a bridge.

In view of all the testimony, and considering all the facts presented in the case, we are unable to discover anything from which we could reasonably imply that the jury in determining the damages of the plaintiff were mistaken, or actuated by

passion or prejudice, or any wrong motive, and are of opinion that the verdict should be sustained.

The order denying a new trial is affirmed.