# SUPREME · COURT.

## BARNEY McDERMETT agt. THE CITY OF KINGSTON.

*Municipal corporations — Negligence of officers, in what it consists — liability of corporation for injuries.*

A municipal corporation (a village or city), which, by its charter, has full control over its streets and highways, is liable for an injury caused by a defect therein, whenever its officers have been remiss and negligent in the discharge of their duties.

Where, by the charter of a city, the common council had "full power * * * to regulate and superintend the laying of all gas-pipes," and, after the pipes had been placed in position, to restore and make the street or highway safe for use, the common council, by a general ordinance, authorized any company to lay down gas-pipes, and instead of reserving its supervisory care over the work, simply declared it to be the duty of such company to put the streets again in good condition, and to maintain, during the progress of the work, proper guards and lights, under a certain penalty for a neglect so to do; in an action against the city to recover damages for an injury to plaintiff by falling into a ditch which had been cut by the gas company directly across the sidewalk, the proof showed that not only was permission given to the gas company to make excavations for the laying of its pipes by a general ordinance, but the particular work done was witnessed by one of the aldermen of the city:

*Held*, that, under these circumstances, if the excavation was left in an unsafe condition, and the plaintiff, whilst traveling upon the sidewalk, and using due and ordinary care, was injured solely by reason of the unsafe condition thereof, the corporation is responsible to him for the injuries sustained thereby.

The negligence of the officers of the corporation in this case does not consist in a failure to discover within a reasonable time what they ought to have observed, but in the conferring upon others general power to disturb streets, and knowledge of such work in progress, without the exercise by them of the supervisory control thereover, which the law gave them, and which they were bound to use for the safety of the public.

Negligence of the city may be evidenced as well by non-user of power conferred in the supervision of the acts of others, as in the failure to remove obstructions, or to repair streets, when the need of either is known or ought to have been known.

*Ulster Circuit, January, 1879.*

McDermett agt. City of Kingston.

MOTION for new trial on judge's minutes.

*Schoonmaker & Linson*, for plaintiff.

*Preston & Chipp*, for defendant.

WESTBROOK, *J.* — The plaintiff recovered a verdict against the defendant during the present circuit for $500, which the defendant moves to set aside.

In the consideration of the questions presented by such motion, whatever of doubt may have surrounded the facts when the evidence was presented, after the verdict of the jury, the following must be deemed to be established:

During the night of October 11, 1876, between the hours of 7 and 8 o'clock, the plaintiff, whilst walking upon the sidewalk of a street in the city of Kingston, called "The Strand," fell into a ditch, which had been cut directly across such sidewalk, and was severely injured. The night was very dark, there was no light burning in that vicinity, and the opening in the pathway, which had been made by a gas company to supply a machine shop with gas to be taken from a pipe in the center of the street, had been very imperfectly and improperly covered.

It also appeared upon the trial, that the excavation, made by the gas company, was seen by Mr. Hallihan, one of the aldermen of the city, whilst it was in progress, who interposed no objection, and gave no directions concerning it. The accident occurred during the night of the day that the trench was dug.

By the charter of the city of Kingston (*subdivision* 23 *of section* 33 *of chapter* 150 *of the Laws of* 1872), its common council had "full power    *    *    *    to regulate and superintend the laying of all gas-pipes in said city," and, after the pipes had been placed in position, to restore and make the street or highway safe for use.

This power of supervision had never been assumed or exer-

cised, but, on the contrary, the common council had, by a general ordinance passed in 1873, authorized any company to lay down gas-pipes, and, instead of reserving its supervisory care over the work, had contented itself with simply declaring it to be the duty of such company to put the streets again in good condition, and to maintain, during the progress of the work, proper guards and lights, under a penalty of fifty dollars for a neglect so to do.

The jury was charged " it was the duty of the city to keep the sidewalks in repair. The one upon which this accident occurred was dug up by the authority of an ordinance of the city. Not only was permission given to the gas company to make excavations for the laying of its pipes by a general ordinance, but the particular work done was witnessed by one of the aldermen of the city, who made no objections thereto. Under these circumstances, it is held, that if the excavation was left in an unsafe condition, and the plaintiff, whilst traveling upon the sidewalk, and using due and ordinary care, was injured solely by reason of the unsafe condition thereof, the defendant is responsible to him for the injuries sustained thereby."

The motion for a new trial is founded upon the alleged error of the charge, and to that point only will the discussion be directed.

The liability of a municipal corporation—a village or city—which has full control over its streets and highways, for an injury caused by a defect therein, whenever its officers have been remiss and negligent in the discharge of their duties, is well settled in this state. Whatever confusion may exist in the law arises not from the want of a firm establishment of this principle, but from a difference of opinion as to what may, in some case be a negligence of the officers of the municipality. When an injury is caused by an obstacle in, or a want of repair of, a street, and neither results from any affirmative act of its representatives, there can be no negligence imputed to them on account thereof, unless knowledge

McDermett agt. City of Kingston.

by them of such obstacle or want of repair is shown, or its existence has continued for a period of time so long that they would, had they discharged their duties with ordinary fidelity, have discovered it. This general rule, unquestionably sound, can have no application to a case like the present. The neg ligence of the officers does not consist in a failure to discover, within a reasonable time, what they ought to have observed, but in the conferring upon others general power to disturb streets, and knowledge of such work in progress, without the exercise by them of the supervisory control thereover, which the law gave them, and which they were bound to use for the safety of the public.

The common council had "full power," as already observed, "to regulate and superintend the laying of all gas-pipes in said city." This grant of authority imposed a duty which they were required to discharge for the protection of citizens and others using the streets. Instead of superintendence over excavations of the character made in this case, and which must be frequent and dangerous, unless properly supervised and guarded, the officers of the city gave a general permit to tear up streets, and contented themselves with a declaration in words of what the parties so tearing them up must do. In no view which I am able to take of this cause can I find a want of culpability on the part of city officials. It is conceded that to entitle the plaintiff to recover, negligence of the city must be shown, and as that may be evidenced as well by non-user of power conferred in the supervision of the acts of others, as in the failure to remove obstructions, or to repair streets, when the need of either is known or ought to have been known, it seems to me that such negligence was abundantly established.

This case differs from that of *Masterton* agt. *The Village of Mount Vernon* (58 *N. Y.*, 391). In that, permission had been given to lot owners to construct a drain from their private property to the public sewer; and the court held, *as the work was not under the supervision of the village*, the municipality

was not responsible for the negligence of the workmen who made it; and, also, that the trial court erred in charging that the corporation was responsible for the acts of those who did the work. In this, however, the city must be regarded in the same light as though it had allowed the work to be done, and the same was in fact done under the actual supervision of its own officers. The law placed it there in express terms, and if such supervision was neglected, its liability arises not only from the fact that by general ordinance it conferred permission to any and every gas company to dig up streets without their oversight and control, but, also, from the fact that knowing the excavation which did the injury was in progress, they subjected it to no supervisory care. What officers have the power to do for the protection of the public they ought to do, and failure to exercise authority, when it ought to be exerted, presents as good ground for a recovery, in actions of this description, as the negligent doing of that which should have been carefully done.

Even, however, within the principles of the case referred to, there was no error in the charges, judge GROVER (*see page* 394) said : " If excavations are being made in the streets by lot owners, to whom permits to connect with sewers or any other lawful purpose has been given, which may render the streets dangerous, or there is reason to believe that such excavations may be made, the officers of the defendant should exercise reasonable care under the circumstances to prevent injury. If such care was omitted, the defendant is responsible." The facts developed upon this trial showed such a complete absence of care, that there was no question of fact whatever for the jury, except as to the condition of the sidewalk, which was submitted. All supervision of that species of work had been omitted to be assumed. A general permit, as has already been stated, to disturb and make streets dangerous had been given, without the retention of any supervisory control, and express knowledge of dangerous excavations in progress attracted no vigilance. Under these conceded facts, the charge

McDermett agt. City of Kingston.

was that if the trench was left in an unsafe condition on a dark night, without a light, the defendant was responsible for an injury produced solely by that cause. In its remarks to the jury, the court contented itself with the general statement of the liability of the city, if the sidewalk was dangerous, without a development of the argument by which that conclusion was reached. A course of reasoning was not necessary to convince those who were to take the assertion of the court as to the law, without testing its accuracy in the crucible of their own reason. As its soundness, however, is now upon trial, it is proper to state that the responsibility of the city for the condition of the sidewalk was predicated not upon any supposed liability by it for the negligence of the servants of others, but upon that of its representatives who, with full power to act for the protection of the traveler, cooly ignored their duties by a general permit to disturb streets without supervision, and when their own eyes saw a need for watchfulness in an open ditch for the reception of an unfortunate passer, those eyes were closed, and limb and life were made to depend upon the skill and care of mere laborers of a gas company, whose work the law required them to supervise — a duty, not only not done, but not even attempted. Assuming that the sidewalk was in a dangerous condition when the misfortune to the plaintiff occurred, it is true that the workmen of the gas company were grossly negligent, but it was also true that the officers of the defendant were equally culpable. The state of the pathway was left for the jury to find; but they were distinctly told, for the reasons now stated, that if the accident was caused solely by its perilous condition, there being no dispute as to the means by which it was made so, and as to the absence of all care thereover by its officers, the defendant was to be held accountable — an accountability arising from its own permissive acts, and a neglect to exercise power, which, as negligence giving a cause of action, is as potent and perceptible as the careless doing of a lawful act could be.

This discussion has already been somewhat protracted, and it will end by the citation of a single authority, which, whilst it is unlike the case of *Masterton* agt. *The Village of Mount Vernon*, above quoted, in the respect of control over the work by the municipality, is the counterpart of this, very nearly, in that particular.

In *Wendell* agt. *The Mayor, etc., of Troy* (4 *Keyes*, 261), the common council was held responsible for an injury caused by a faulty construction of a sewer, which the corporation had power to oversee. The liability (*see page* 272) was put, by judge WOODRUFF, in his opinion, upon the right of the municipality to supervise the work, and what he does say is so exactly applicable to the cause before us that we quote his exact words : " Now, however true it may be that the corporate authorities are not under any such responsibility as insurers of the safe condition of the streets, that they become instantly liable for defects the moment they occur, and although they are caused by the act of a wrong-doer, and without any previous notice to them, calling their power and duty to provide for their safe condition into exercise, it is clear, I think, that when they consent that the public street may be excavated and a drain introduced, they have notice that an act is to be done which directly invokes their power and duty, and calls for its exercise in behalf of the public, to see to it that the property of those who have a right to pass and repass is not endangered by a hidden trap which superficial observation would not disclose ; and supervision of the work to that end was, therefore, incumbent upon them."

What was true, when judge WOODRUFF penned these sentiments, is true now. When the common council of the defendant knew that work was in progress, under their general permission, which might be dangerous, it was their duty to exercise the power the law conferred upon them, so that, not property only, but human beings, might pass with safety, without being " endangered by a hidden trap " made

invisible, in the absence of a light, by the darkness of a " very dark night," and unprotected by a guard. The safety of the citizen demands of municipalities supervision in these cases, in which the law confers the power, and when they, by their officers, refuse and neglect its exercise, the rule which holds them responsible for injuries caused thereby is neither harsh, oppressive or unjust, but, on the contrary, is wise, salutary and just.