Clement, J.
The appellant is the owner of a house and lot on Throop avenue between Walton and Wallabout streets in the city of Brooklyn and uses a portion of the premises as a bakery. The Kent avenue sewer, so called, is located in Wallabout street and is the main sewer of a tract of several hundred acres. There are many lateral sewers emptying into the main sewer, which was originally of sufficient size to carry off the water flowing into it, but by reason of the rapid growth of the city is now inadequate, in case of heavy rain storms, to carry off all the water and as a result becomes choked up and a flood of water is forced out which has repeatedly, during the past six years, flooded the premises of plaintiff. In 1878 he lost seventy-two barrels of flour, worth $325, and butter and lard of the value of $42. Plaintff has suffered similar damage on several other occasions. The cellar was filled with water which was forced out of the manholes of the sewer.
There wa°s testimony on the trial tending to show that plaintiff’s premises were on grade. The sewers were built on a plan adopted by the proper depart *102 ment, and the sole cause of the flooding of the premises was the inadequacy of the main sewer to carry off the water from the lateral sewers emptying into it! The overflow of the sewer in that vicinity has been for several years past a matter of public notoriety and the city officials have had repeated notice of the damage done to plaintiff.
The learned judge before .whom the cause was tried, dismissed the complaint, holding that the city was not liable “ when in the exercise of a quasi-judicial discretion, the municipal corporation perhaps makes a mistake as to the capacity of a sewer.”
This decision was undoubtedly based on the principles laid down in Mills v. City of Brooklyn, 32 JST. T. 489, but we are of opinion that this case presents a different question of law.
In the Mills case, the sewer was insufficient to drain the water from the land of the plaintiff, and he suffered no positive injury by reason of the inadequacy of the sewer. It is true that he suffered a negative injury, but for the failure to provide any sewer, or for the inadequacy of a sewer to drain the surface water, no liability exists against the municipality. The premises are. in no worse condition than if no sewer existed.
There are several authorities where the municipal corporation, by reason of providing an improper outlet, has done a positive injury to the property owner ; and it is only necessary to refer to them to see that the municipality cannot, without liability, injure the property of the individual by the overflow of the water after it ceases to be surface water and passes into the sewer.
In Byrnes v. City of Cohoes, 67 N. Y. 204, the defendant made a gutter on Main street and conducted the surface water of a large district through it, which terminated at a point opposite the plaintiff’s premises, and they were thereby frequently flooded. Judge *103 Rapadlo held that the plaintiff could recover his damages, and says “ the cases cited on the part of the appellant to the effect that a municipal corporation is not liable for an omission to supply drainage or sewerage, do not apply where the necessity for the drainage or outlet is caused by the act of the corporation itself.”
In Noonan v. City of Albany (79 N. Y. 470), on the same state of facts, Judge Andrews says, “ a municipal corporation has no greater right than an individual to collect the surface water from its lands or streets into an artificial channel and discharge it upon the lands of another, nor has it any immunity from liability for creating or maintaining nuisances.”
On the foregoing authorities, it seems to be established that a municipal corporation is not bound to provide a sewer at all, or may provide a sewer which is insufficient to carry off the surface water—and there would be no liability for the damage caused by the insufficiency of the sewer to carry off the water which naturally flows on the land of the individual, but where it undertakes to interfere with the surface water and collect it from a large territory, it cannot empty it on private property, or on the street so as to flood the premises of the abutting owner.
It is apparent that the liability of the city does not exist simply by reason of the fact that the water flowed out of the outlet of the sewer, but because a positive injury is done to the individual, and the municipality cannot defend for such an injury on the ground that the sewers were laid out, in a certain sense, judicially.
In the present case the overflow came from the manholes in the sewer, and a positive injury was done to the plaintiff. If the city is held liable because of the positive injury done, what difference does it make whether the water flows but of the outlet at the end of the sewer, or out of a- manhole at a point half a mile *104 from its outlet 1 The liability arises by reason of the damage done by the flooding from the sewer and not because the water runs out of the end of the sewer or from a point in its line—in the words of Judge Raparlo, before quoted, “where the necessity for the drainage or outlet is caused by the act of the corporation itself.
The precise question in this case arose in the case of Bastable v. City of Syracuse, 8 Hun, 587. The 'authorities ol’ the city of Syracuse were authorized to lay out streets and provide gutters, by statute. The surface water of a district of thirty-two acres was drained into a gutter running through University avenue, and at a certain point, the water overflowed and flooded the lands of plaintiff. The court held that the city was liable for the damage done. An examination of the record shows that the only distinction between that case and the one now before us, on the facts, is that the gutter was not covered. The carrying off the water in an inclosed sewer and not in an open gutter makes no difference in the law.
That case was taken to the court of appeals, and though the appeal was dismissed and the present question was not expressly decided, yet the court uses this language : “We think this case probably falls within the principle of Byrnes v. City of Cohoes” (Bastable v. City of Syracuse, 72 N. Y. 64).
In Lynch v. Mayor, &c. of N. Y. (76 N. Y. 60), Judge Earl lays down the exact distinction between the principle decided in Wilson v. Mayor, &c. of N. Y. (1 Denio, 595), and Mills v. City of Brooklyn (32 N. Y. 489), on the one hand and Byrnes v. City of Cohoes, on the other, and refers to the case of Bastable. He says, at page 63, after stating that the municipal corporation has the same right as a private individual: “ Each owner may improve his lot and protect it from surface water. He may not collect such water into a *105 channel and throw it upon his neighbor’s lot. But he is not bound for his neighbor’s protection to collect the surface water which falls upon his lot and lead it into a sewer.” See also McCormick v. Horan (81 N. Y. 86, 90).
In the authorities in other States, the distinction between a positive and negative injury by inadequate sewerage is clearly recognized. >
In Fair v. City of Philadelphia (88 Penn. St. 309), the injury resulted for the reason that the sewer was unable to carry off the surface water. The city was held not to be liable for the damage, but in the opinion it is expressly stated, that “none of the water which passed into that sewer was forced back or out of the old sewer so as to flood the streets or the plaintiff’s property.”
Judge Van Syckel in a recent decision in New Jersey also clearly distinguishes the cases bearing on this question. (Field v. Township of West Orange, 29 Alb. L. J. 397), and Judge Cooley, in the case of Ashley v. Port Huron (35 Mich. 296), clearly and forcibly decides that a municipal corporation is liable on a state of facts similar to those before us. See also, Dillon's Mun. Corp. § 1051 sub. 3; Wood's Law of Nuisances, § 378; Cooley on Torts, 579, 580.
The premises of the plaintiff in this case were on grade and yet repeatedly they have been flooded by the overflow of the sewer. If there was no sewer in the street, or if the sewer was inadequate to carry off the surface water from the property of plaintiff or the vicinity, there would be no liability on the part of defendant for any damage by the surface water; but when the city authorities constructed a sewer to drain a large district, they were bound to provide one adequate to carry the water to a proper outlet, and not to permit it repeatedly to overflow and damage the property of the owners along the line of the sewer.
*106 Judgment reversed and a new trial granted, costs to abide the event.
Reynolds, J., concurred.
Note.—The significance of this decision is in its clear elucidation of the principle that the municipal exemption from liability, resulting from defect or inadequacy in the plan of a local improvement, is limited to complaints by those disappointed in the expectation of enjoyment of benefits of the work, and does not extend to bar the complaints of others injured by a trespass or nuisance which the work constitutes or causes.
The exemption is a corrollary of the general propositions that a municipality is not bound to undertake a local improvement, and hence is not liable for failing to supply the advantages which the work might afford; or even in the exceptional cases where it is required by law to undertake such a work, or exercises its option to undertake it, its authority in the selection of a plan is of a gaasi-judicial nature, which does not involve liability to those expecting to enjoy its advantages, in case of inadequacy or defect of the plan, impairing the usefulness of the work, or producing incidental injury to those enjoying its advantages.
See, also, McClure v. City of Red Wing, 28 Minn. 186 ; Cummins v. City of Seymour, 79 Ind. 491; Bannagan v. District of Columbia (Supm. Ct. Dist. C. Jan. 1883), 11 Washington Lam Rep. 259 ; Johnston v. The Same (Jan. 1882) 10 Id. 420; Fleming v. Mayor, &c. of Manchester, 44 Law T. R. N. S. 517; Hammond v. Vestry of St. Pancras, 30 Id. 296; Gould v. City of Topeka, 32 Kan. ; S. C., 30 Alb. L. J. 352; Rowe v. City of Portsmouth, 56 N. H. 291; Wiun v. Village of Rutland, 52 Vt. 481; Rigney v. City of Chicago, 102 Ill. 64; Vanderslice v. City of Philadelphia, 103 Pa. St. 102; Ashley v. City of Port Huron, 35 Mich. 296; Brayton v. City of Fall River, 113 Mass. 218; Town of Union v. Durkes, 38 N. J. L. 21. Consult also 18 Am. L. Rev. 1008.
So, the general rule in force in many jurisdictions, that a city is not liable for injuries resulting from change of grade, has been recently held not to exempt from liability for dumping earth upon plaintiff’s premises in so doing. Broadwell v. City of Kansas, 75 Mo. 213.
And see Keating v. City of Cincinnati, 38 Ohio St. 141; and art. in 10 Am. L. Rec. 705.
As to liability for a work of third persons, undertaken by the license of the municipality, see Wendell v. Mayor, &c. of Troy, 4 Abb. Ct. App. Dec. 563; City of Ironton v. Kelly, 38 Ohio St. 50; *107 Gaff v. Hutchison, 38 Ind. 341; O’Connor v. St. Louis, &c. R. R., 56 Iowa, 735. Compare Watson v. Tripp, 11 R. I. 98.
What adoption of a private sewer or drain will make the municipality liable for its construction or condition,—see Sellick v. Hall, 47 Conn. 260; Emery v. City of Lowell, 104 Mass. 13; and see Bishop v. City of Centralia, 49 Wisc. 669; Shartle v. City of Minneapolis, 17 Minn. 308; Beazan v. Mason City, 58 Iowa, 233.

Q