BROADWELL v. THE CITY OF KANSAS, *Appellant.*

1. **Municipal Corporation:** LIABILITY FOR DAMAGES. If earth used in grading a street under a contract with the city be permitted to roll down upon the premises of an adjoining proprietor, to his damage, the city will be liable.

2. ———: ———: CONSTITUTIONAL LAW. Injury so done is a taking of private property within the meaning of the provision of the constitution which forbids the taking of private property without just compensation.

3. ———: ———: JUDGMENT. It is no defense to a suit brought by the adjoining proprietor to recover for such an injury, to show that judgment has been rendered against him on a special tax-bill issued to the contractor. His claim being for unliquidated damages could not be pleaded in answer to that suit.

*Appeal from Lafayette Circuit Court.*—The case was tried before WILLIAM WALKER, ESQ., sitting as Temporary Judge.

AFFIRMED.

This was an action against the City of Kansas and John Halpin to recover damages for crushing in and destroying plaintiffs' house. Halpin was a contractor with the city for the grading of the sidewalks in Fifth street, and plaintiffs owned premises abutting on that street. The grade of the street, as established by the city ordinance, was about on a level with the top of plaintiffs' house. In making the fill necessary to bring the sidewalks up to grade large quantities of earth rolled down upon plaintiffs'

premises and against the wall of their house, the result of which was to crush in the wall and throw down the house. The defense was that the work was done by authority of an ordinance and with due care, and that the earth only took its natural slope in rolling down; and further, that defendant Halpin had sued plaintiffs on a special tax-bill issued by the city for the work so done, and had recovered judgment and plaintiffs had paid the judgment.

*Wash Adams* and *Karnes & Ess* for appellants.

The city had power to change the grade of the street, and as the damage complained of resulted from such change it was *damnum absque injuria.* *Imler v. Springfield,* 55 Mo. 119 ; *Schattner v. Kansas,* 53 Mo. 162 ; *Hoffman v. St. Louis,* 15 Mo. 651; *Wegmann v. Jefferson,* 61 Mo. 55. The evidence showed that the grading was done in the usual way, by allowing the dirt thrown upon the street to take its usual and ordinary slope. This statutory authority to grade is necessarily an authority to grade in the usual and ordinary way. The power to change the grade *ad libitum,* necessarily qualifies and restricts the doctrine of lateral support. All lots are bought and sold with reference to this statutory authority. *Taylor v. St. Louis,* 14 Mo. 20; *Radcliff v. Brooklyn,* 4 Com. 195 ; *Mayor v. Omberg,* 28 Ga. 46 ; *City of Quincy v. Jones,* 76 Ill 231; *s. c.,* 20 Am. Rep. 243. The fact that tax-bills were issued for this identical work of grading, the plaintiffs herein sued therefor by defendant Halpin, and paid by plaintiffs was certainly pertinent testimony. These bills were issued for the very work complained of here as a trespass. They were litigated and contested between plaintiffs and defendant Halpin, and their legality established, and after this had been done, plaintiffs had paid the judgment. Certainly a judgment of a court of competent jurisdiction recovered for this very work now alleged to be a trespass, would operate to relieve the acts complained of from being a trespass ;. besides, it would be *res adjudicata.*

*Frank Titus* for respondent.

The city is liable for damages occasioned by its unlawful grading and filling of plaintiffs' property, see *Wegmann v. Jefferson City*, 61 Mo. 55; *Hannon v. St. Louis*, 62 Mo. 313; *Imler v. Springfield*, 55 Mo. 119; *Soulard v. St. Louis*, 36 Mo. 546; *Thayer v. Boston*, 19 Pick. 511; *Delmonico v. City*, 1 Sandf. (N. Y.) 222; *Nevins v. Peoria*, 41 Ill. 502; *Stone v. Fairbury, etc., R. R. Co.*, 68 Ill. 394; s. c., 18 Am. Rep. 556; *Stack v. East St. Louis*, 85 Ill. 377; s. c., 28 Am. Rep. 619; 5 Cent. L. J. 385; *Meares v. Commissioners, etc.*, 9 Ired. 73; *Kelley v. New York*, 4 E. D. Smith 291; *Smith v. Milwaukee*, 18 Wis. 63; *Hutson v. New York*, 9 N. Y. 163; *Inman v. Tripp*, 11 R. I. 520; s. c., 23 Am. Rep. 520; *Fink v. St. Louis*, 71 Mo. 52; *Barns v. Hannibal*, 71 Mo. 440. The injuries shown in evidence constitute a "taking" within the meaning of the constitutional provision regarding a taking for public use, etc., see *Pumpelly v. Green Bay Co.*, 13 Wall. 166; Cooley's Const. Lim., (3 Ed.) 545; *Sinnickson v. Johnson*, 2 Harr. (N. J.) 129; *Lackland v. R. R. Co.*, 31 Mo. 180; *Shaffner v. St. Louis*, 31 Mo. 264; *Tonawanda R. R. Co. v. Munger*, 5 Denio 255; City Charter, Acts of Mo. 1870, p. 327; City Charter, Acts of Mo. 1872, p. 403, § 24; *Dodson v. Cincinnati*, 34 Ohio St. 276; s. c., 7 Cent. L. J. 398; 2 Addison on Torts, (Wood's Ed.) p. 247; *Kemper v. Louisville*, 14 Bush 87; 2 Dill. Munic. Corp., § 460, *et seq.*; *Eaton v. B. C. & M. R. R. Co.*, 51 N. H. 504; s. c., 12 Am. Rep. 147; *Meyers v. St. Louis*, 8 Mo. App. 266.

## I.

SHERWOOD, C. J.—It may be conceded at the outset that the city would not have been answerable in this action if it were bottomed on the mere fact that consequential injuries have resulted to plaintiffs because of the grading of the street by the contractor Halpin. The authorities on this point, in this State, as well as elsewhere, are numer-

ous, and many of these cited by counsel. The approved doctrine on this subject is thus succinctly stated by a writer of recognized authority. " The courts, by numerous decisions in most of the states, have settled the law that municipal corporations, acting under authority conferred by the legislature, to make and repair, or to grade, level and improve streets, if they keep within the limits of the street and do not trespass upon or invade private property, and exercise reasonable care and skill in the performance of the work resolved upon, are not answerable to the adjoining owner whose lands are not actually taken, trespassed upon or invaded, for consequential damages to his premises, unless there is a provision in the charter of the corporation, or in some statute creating the liability." 2 Dillon Munic. Corp., § 990.

But in this case the action is not for consequential damages, but for a direct and positive injury. The contractor Halpin, who in this behalf, was the servant of the city, did not " keep within the limits of the street." On the contrary, he trespassed upon and invaded private property. And for this the city is clearly answerable, and to it in such circumstances the doctrine of *"respondeat superior"* applies. If the contractor, while confining himself to the area and boundaries of the street, had performed the work assigned him with reasonable care and skill, and in consequence thereof some indirect, some consequential injury had resulted therefrom, no action would lie, and plaintiffs would be without remedy. And to their case, according to the authorities, would be applicable that self-contradictory maxim of " *damnum absque injuria.*" This case, however, involves no such circumstances as will admit of invoking that maxim ; the injury, as before stated, being the immediate result of the wrongful act. And we think that the liability of the city and of the contractor may well be placed on either or both of these grounds : 1st, That the injury resulted from the work not being done with reasonable

care and skill; 2nd, That such injury resulted from the commission of a tort.

What is reasonable care and skill, is, of course, largely dependent on the surroundings of each particular case, and is, therefore, a relative term. But we cannot regard that as such care and skill, which unnecessarily, not to say recklessly and wantonly, dumps on the premises of an adjoining proprietor, large quantities of earth, covering those premises many feet in depth, crushing in the walls of and destroying a dwelling house, situated some twenty feet from the street. If, upon making the fill required by the contract, it became apparent that the work could not be completed without direct injury, such as before mentioned, to an adjoining proprietor, unless a wall were built to restrain the earth within the limits of the street, then such wall should have been built, and reasonable care and skill, as applicable in this connection, required that wall's construction.

The fact that statutory authority existed for doing the work, did not carry with it a power to directly injure or destroy the property of an adjoining proprietor. If it were necessary to make a fill in order to grade a street, and the embankment were required to be raised so high that it would become necessary, as is sometimes the case, to make cross-embankments, or supports of either earth or stone in order to keep the principal embankment in place, no one would doubt that before the land of adjoining proprietors could be occupied by such cross-embankments, either the consent of such proprietors would have to be obtained, or else proper legal proceedings taken to condemn the required land. And there can be no essential difference in principle between occupying one's land with earth deposited there as the incident of making the principal embankment, and doing the same thing by making a cross-embankment. If the owner of a private lot should decide to fill it with earth, the fact that he had the legal and undoubted right thus to fill his own lot up to a certain

level, would not give him the right in so doing to dump earth on his neighbor's lot, either directly or incidentally, and we do not perceive that the city has any greater rights than would a co-terminous proprietor, in similar circumstances. In a word, the maxim "*sic utere tuo 'ut alienum non laedas*" should govern the actions of municipal corporations as well as those of individuals.

## II.

Moreover, section 16 of article 1 of the constitution of 1865, provided that: "No private property ought to be taken or applied to public use, without just compensation." Here the city and its servant took the property of plaintiffs within the meaning of that section. The taking of property within that prohibition may be either total or absolute, or a taking *pro tanto*. "Any injury to the property of an individual which deprives the owner of the ordinary use of it, is equivalent to a taking and entitles him to compensation." " So a partial destruction or diminution of value of property by an act of the government which directly and not merely incidentally affects it, is to that extent an appropriation." Cooley Const. Lim., (4 Ed.) 680, *et seq.*; *Pumpelly v. Green Bay Co.*, 13 Wall. 166; *Hooker v. New Haven & North Hampton Co.*, 14 Conn. 146; *Arimond v. Green Bay Co.*, 31 Wis. 316; *Ashley v. Port Huron*, 35 Mich. 296; *s. c.*, 24 Am. Rep. 552; *Eaton v. Railroad Co.*, 51 N. H. 504; *s. c.*, 12 Am. Rep. 147.

## III.

So far as concerns the judgment rendered against plaintiffs on the tax-bills, we are unable to discover what relevancy such a judgment could have in the present action, since this action is for unliquidated damages, and could not have been pleaded in answer to that suit. *Mahan v. Rose*, 18 Mo. 121; *Pratt v. Menkens*, 18 Mo. 158; *Johnson v. Jones*, 16 Mo. 494. Halpin might very properly recover for the work which he had lawfully done in grad-

ing the street, and still both he and 'his employer, the city, be held liable for the unnecessary and direct injury done to plaintiffs' property, while the work was in progress. This cause was tried in conformity to the foregoing views, both in giving and in refusing instructions, and the judgment is affirmed. All concur.

*Motion for Rehearing Overruled.*