## ALBERT J. DAVOREN et ux. v. KANSAS CITY, Appellant.

In Banc, May 23, 1925.

1. **NEGLIGENCE: Nuisance: Pond on Private Property: Caused by Construction of Street: Drowning of Children: Liability of City.** A city which, in improving a street in a thickly inhabited district, makes a fill therein across an intersecting ravine, thereby creating a pond, on private property, two hundred feet long and wide, varying in depth from a few inches at the edges to fourteen feet at the center, thereby creates a nuisance, and having permitted such nuisance to continue for a long number of years is liable in damages to the parents of small children who, attracted by ice on the pond to play thereon, are drowned when the ice breaks under their weight. It is common knowledge that large ponds in the midst of a great city are highly attractive to children, both for purposes of bathing and skating, and the law does not permit the city to create and maintain for years such a nuisance, or having created it persistently to neglect to abate it by the construction of adequate

308 Mo. Sup.—33.

culverts or drains through the dam to afford an outlet to the accumulated surface water in the pond; and to permit the city to escape the payment of damages for the death of children resulting from such obvious neglect of its duty, on the sole ground that the pond was located on private property and the children's death did not result from use of the street, would be unreasonable and a denial of the fundamental principles of justice.

*Held*, by GRAVES, C. J., dissenting, ATWOOD, J., concurring in the result, that the city had the legal right to construct an embankment in the street of sufficient height to protect it from surface water, and it was not negligence to do what it had a legal right to do; that in changing the grade of the street the city was liable in damages for whatever injury was thereby done to abutting private property, but it was guilty of no act of negligence in protecting the street from the surface water accumulated by the ravine, nor in failing to provide drains through the fill or dam as an outlet for such surface water; and as the only negligence charged is the construction and maintenance of the fill and failure to provide outlets for the water, there can be no recovery.

*Held*, also, that the case, both by the allegations and the instructions, is grounded on the principle of the turn-table cases, and the facts do not bring it within the rule of those cases, and the demurrer should have been sustained.

2. **TRESPASSERS: Children at Play on Pond.** Children who habitually gather for play on the ice of a large pond on private property in the midst of a great city, which, having been created by the construction by the city of a deep fill or high dam across a ravine intersecting a street, has been permitted to continue for nineteen years, are not to be considered as trespassers, but as licensees, in a suit against the city for damages brought by parents whose children were drowned when the ice on which they were playing gave way under their weight.

3. **NEGLIGENCE: Nuisance: Abatement: Dam in Street: Drowning of Children on Private Property: Surface Water.** It is no defense to the action against the city for damages that the pond, in which plaintiff's children were drowned while at play upon the ice, was located upon private property, where the city constructed in the street the dam which created the pond, and an outlet for the waters could have been inexpensively provided by the construction of a drain or culvert through the dam, and thereby the nuisance abated.

*Held*, by GRAVES, C. J., that the city is not guilty of negligence in making a fill in its street, where it is intersected by a natural ravine, for the purpose of protecting the street from surface water; and if such fill causes a pond to form upon the

abutting private property, it is no more liable in damages to parents whose child was drowned while at play upon the thin ice of the pond, than would be the owners of the private property had they created the pond by constructing a dam further up the ravine. All persons have a legal right to protect their lands from surface water, and are under no legal obligation to provide drains as outlets.

4. **EXCESSIVE VERDICT: For Death of Child: Ten Thousand Dollars.** A verdict for ten thousand dollars as the amount of damages sustained by parents when their child, six years and seven months old, was negligently permitted by the city to be drowned in a pond created and permitted to be unreasonably maintained by the city, is too large by five thousand dollars.

Citations to Headnotes: Headnote 1: Municipal Corporations, 28 Cyc. p. 1293; Negligence, 29 Cyc. p. 464. Headnote 2: Negligence, 29 Cyc. p. 457. Headnote 3: Municipal Corporations, 28 Cyc. p. 1383. Headnote 4: Damages, 17 C. J. sec. 235.

Appeal from Jackson Circuit Court.—*Hon. James H. Austin,* Judge.

AFFIRMED (*upon condition*).

*John B. Pew, Solon T. Gilmore* and *Ilus M. Lee* for appellant.

(1) The court erred in overruling the demurrer offered by the defendant at the close of plaintiff's evidence, because: The pond was located wholly upon private property; the accident did not result from any use of a street, and under all the facts there was no duty owing the deceased, and hence no liability upon the part of the defendant. Arnold v. St. Louis, 152 Mo. 173; Overholt v. Vieths, 93 Mo. 422; Moran v. Pullman Co., 134 Mo. 641; Kelly v. Benas, 271 Mo. 1; Hight v. Bakery Co., 168 Mo. App. 431; Buddy v. Terminal Ry. Co., 276 Mo. 276; State ex rel. v. Ellison, 281 Mo. 667; Rallo v. Const. Co., 291 Mo. 221; Omaha v. Bowman, 52 Neb. 293; Murphy v. Brooklyn, 23 N. E. 887; Peters v. Bowman, 47 Pac. 113; Tavis v. Kansas City, 80 Kan. 547; Hooper v. Topeka, 92 Kan. 11; Gillespie v. McGowan, 100 Pa.

St. 144; Klix v. Nieman, 68 Wis. 271. (2) The court erred in the giving of plaintiffs' main instruction in that the instruction submitted the "attractive nuisance" or "turn-table" doctrine to the jury. Barnett v. Kansas City, 214 S. W. (Mo. App.) 240; State ex rel. Kansas City v. Ellison, 281 Mo. 667; Hight v. Bakery Co., 168 Mo. App. 431; O'Hara v. Gas Light Co., 244 Mo. 395; Smith v. Dold Packing Co., 82 Mo. App. 9; Overholt v. Veiths, 93 Mo. 422; Barney v. Railroad, 126 Mo. 372; Moran v. Pullman Car Co., 134 Mo. 641; Arnold v. St. Louis, 152 Mo. 173; Kelly v. Benas, 217 Mo. 1; Buddy v. Terminal Ry. Co., 276 Mo. 276; Rallo v. Heman Const. Co., 291 Mo. 221. (3) The verdict is excessive. Dugdale v. Ry. Co., 195 Mo. App. 258.

*Hogsett & Boyle* for respondents.

(1) This case was not founded upon the "turntable doctrine" but upon a wholly different theory of liability. The petition alleges facts showing that the pond was a dangerous nuisance created by defendant's negligence, and that defendant should have anticipated injury therefrom, and that the death of the child directly resulted therefrom. These facts create a cause of action. Capp v. St. Louis, 251 Mo. 345; Benton v. St. Louis, 217 Mo. 694; Benton v. St. Louis, 248 Mo. 110; Jensen v. Kansas City, 181 Mo. App. 359; City of Elwood v. Addison, 26 Ind. App. 28; Omaha v. Richards, 49 Neb. 244; Omaha v. Bowman, 59 Neb. 84; City of Indianapolis v. Williams, 58 Ind. App. 447; Kansas City v. Siese, 71 Kan. 283; Williams v. Gas & Elec. Co., 274 Mo. 12; Godfrey v. Kansas City L. & P. Co., 253 S. W. 236. The mere fact that the petition alleged, in addition to the foregoing facts that the condition was "attractive to children," did not destroy the cause of action. Godfrey v. L. & P. Co., 253 S. W. 239; Capp v. St. Louis, 251 Mo. 352; Jensen v. Kansas City, 181 Mo. App. 359; Williams v. Gas & Elec. Co., 274 Mo. 11; Day v. Ice Co., 136 Mo. App. 280; City v. Addison, 26 Ind.

App. 28. The "attractive to children" allegation may be eliminated from the petition as surplusage. Callicotte v. Rock Island Ry. Co., 274 Mo. 693; Wolfe v. Payne, 241 S. W. 919; Wessel v. Lavender, 262 Mo. 430; Rutledge v. Swinney, 261 Mo. 141; Bradley v. Becker, 296 Mo. 548; Wyler v. Rabican, 150 Mo. App. 479; Truel v. Ry. Co., 143 Mo. App. 380.; Lampe v. Ry. Co., 209 Mo. App. 371; Morgan v. Zinc Co., 199 Mo. App. 26; Miniea v. Cooperage Co., 175 Mo. App. 91.    The "turn-table doctrine" is never applicable unless the dangerous agency is upon premises owned or controlled by the defendant. O'Hara v. Gas Light Co., 244 Mo. 404; Godfrey v. L. & P. Co., 253 S. W. 238; Williams v. Gas & Elec. Co., 274 Mo. 11; Capp v. St. Louis, 251 Mo. 353; Day v. Ice Co., 136 Mo. App. 280; Ratliff v. Power Co., 203 S. W. 235; Beckwith v. City of Malden, 253 S. W. 18; Brady v. Traction Co., 253 S. W. 202; 20 R. C. L. p. 80; Kelly v. Benas, 217 Mo. 11. Pleadings should be liberally construed so as to distinguish between form and substance. Secs. 1257, 1291, R. S. 1919. (2) The principle of law permitting a landowner to defend his land against surface water cannot relieve the defendant of liability. (a) The rule has no application because the city was not protecting its street from surface water. Lincoln Railroad Co. v. Sutherland, 44 Neb. 526; McInery v. St. Joseph, 45 Mo. App. 296; Woods v. City of Kansas, 58 Mo. App. 279. (b) The right to protect against surface water is limited by the duty to exercise ordinary care in so doing, so that unnecessary damage may not result to others. Goettenetroeter v. Kappleman, 83 Mo. App. 294; Abbott v. Railway, 83 Mo. 281; Rychlicki v. St. Louis, 98 Mo. 501; Cox v. Railway, 174 Mo. 606; Hosher v. Railway, 60 Mo. 333; Jones v. Hannovan, 55 Mo. 466; Jones v. Railway, 84 Mo. 155.; Moss v. Railway, 85 Mo. 89; McCormick v. Railway, 57 Mo. 437; Clark v. Railway, 36 Mo. 224; Hoelscher v. Railway, 182 S. W. 1080; Sandy v. City, 142 Mo. App. 330; Lewis v. City, 142 Mo. App. 84; Hannan v. City, 187 Mo. App. 315; McInery v. City, 45 Mo. App. 296; Car-

son v. City, 53 Mo. App. 289.; Torpey v. City, 24 Mo.
App. 288; Beauchamp v. Taylor, 132 Mo. App. 92. In
view of the fact that reasonable minds might differ upon
the question whether the city used ordinary care in build-
ing an embankment without an adequate outlet, the ques-
tion was one of fact for the jury. Power v. Ry. Co., 244
Mo. 11; Huhn v. Ry. Co., 92 Mo. 450; Paden v. Van
Blarcom, 181 Mo. 128; Powers v. Transit Co., 202 Mo.
280. (c) It was not ordinary care for the city to dam
up this ravine or natural drainway, which was the nat-
ural outlet for large quantities of surface water follow-
ing rains and melting snows. Neither, the civil-law rule
nor the common-law rule would permit the city to ob-
struct a natural drainway so as to dam up surface water.
Soules v. Railroad Co., 34 N. Dak. 7; Jungblum v. Rail-
road Co., 70 Minn. 153; Quinn v. Ry. Co., 120 N. W.
884; Wharton v. Stevens, 84 Iowa, 107; City of Waverly
v. Page, 105 Iowa, 225; Tretter v. Ry. Co., 147 Iowa,
375.; Goettenetroeter v. Kappleman, 83 Mo. App. 290;
3 Farnham on Water & Water Rights, p. 2599; 2 Farn-
ham on Water & Water Rights, p. 973; McClure v. City
of Red Wing, 28 Minn. 186; Van Pelt v. City of Daven-
port, 42 Iowa, 308; L. R. & Ft. Smith Railroad Co. v.
Chatman, 39 Ark. 463; Ry. Co. v. Wallis, 82 Ark. 447;
Ry. Co. v. Hardin, 87 Ark. 475. (3) There is a vital dis-
tinction between the status of the defendant city, and
the status of the landowner if he had been sued. The
landowner could have defended on the ground that the
boy was a trespasser upon his premises and took the
premises as he found them; but the city could not as-
sert that defense. Godfrey v. L. & P. Co., 253 S. W. 239;
Williams v. Gas. & Elec. Co., 274 Mo. 11; Day v. Ice
Co., 136 Mo. App. 280.; Ratliff v. Power Co., 203 S. W.
234. (4) The city having chosen to provide an outlet
to drain away water, is liable for its negligence in fail-
ing to provide an adequate outlet. Kimbrough v. City,
201 S. W. 625.; Woods v. City of Kansas, 58 Mo. App.
278; Donahoe v. Kansas City, 136 Mo. 669; Barree v.
City, 197 Mo. 389; Salmon v. Kansas City, 241 Mo. 53;

Geiger v. St. Joseph, 198 S. W. 78; City of Elwood v. Addison, 26 Ind. App. 28; Denver v. Rhodes, 9 Colo. 561; City of Alton v. Hope, 68 Ill. 167; Brunswick v. Tucker, 103 Ga. 233; Ellis v. Iowa City, 29 Iowa, 229; Powers v. Council Bluffs, 50 Iowa, 197; Morley v. Buchanan, 124 Mich. 128; Harper v. Milwaukee, 30 Wis. 365; Gilmore v. Laconia, 55 N. H. 130; Parker v. Nashua, 59 N. H. 402; Buchanan v. Duluth, 40 Minn. 402; City of Logansport v. Wright, 25 Ind. 512; 2 Farnham on Water & Water Rights, p. 1136.

WOODSON, J.—This was a suit instituted in the Circuit Court of Jackson County by the plaintiffs, husband and wife, against Kansas City, the defendant, for the alleged negligence in drowning their minor son, six years and seven months old. The case was tried before the court and jury, which resulted in a verdict and judgment for the plaintiffs for $10,000, and after moving unsuccessfully for a new trial the defendant duly appealed the case to this court.

The pleadings are unassailed and therefore it would be useless to notice them.

The facts of the case are simple, and practically undisputed. The name of the dead child for whose life the parents sued, was Karl Davoren, who had a twin brother named Kenneth, who was also drowned at the same time and place that Karl lost his life. They came to their death by drowning in a pond which was created by the city in constructing a high fill, or dam, across a ravine, for street purposes, on top of which a street was duly constructed. The city neglected to provide a culvert or other outlet sufficient to allow the surface water to escape that accumulated above said fill. Said pond of water was entirely upon private property, and was not so closely located to a public street as to endanger the lives of the deceased children by falling into it while passing along the street.

The pond was located on the south side of Twenty-first Street between Bales Avenue and Askew Street in

Kansas City. Bales Avenue and Askew Street run north and south, and Twenty-first Street runs east and west, and crosses Bales and Askew. In the space between Bales and Askew the natural topography of the land is in the form of a ravine or draw, several blocks long, running in a northerly and southerly direction. The natural drainage of surface water through this ravine or draw was toward the north. The ravine began at Twenty-fifth or Twenty-sixth Street, which is four or five blocks south of Twenty-first Street, and extended north to Eighteenth Street, making the ravine about eight blocks in length. The ravine drained all of that territory lying between Twenty-sixth Street on the south, Bales Avenue on the west, Askew Street on the east, and Eighteenth Street on the north—a territory comprising eight square city blocks. Four or five of these square blocks lay south of Twenty-first Street.

In 1901 the defendant city constructed a high fill along and upon Twenty-first Street, directly across this ravine, like a dam. The height of the fill was about twelve to fourteen feet above the surface of the water at the time of the drowning. The length of the fill was about 150 feet from east to west.

Previous to the construction of this fill there was no pond on the private property south of Twenty-first Street. Immediately after the city constructed this fill or dam, however, the surface water from the land to the south began damming up on account of the fill, and accumulating upon the private property south of the fill. The result was that a deep pond formed thereon, extending about 250 feet across at its widest point, measuring east and west, and about 200 feet north and south. The contour and appearance of the pond are shown by the diagram and by the photographs in evidence. The pond was right up against the embankment of the fill; that is, the embankment formed the north shore of the pond.

Davoren v. Kansas City.

EXHIBIT 12.

EXHIBIT 13.

The defendant city apparently recognized its, duty not to dam up surface water on the abutting property, for when it constructed the fill it put a pipe through the fill to drain off the surface water. But the pipe was too small and was wholly inadequate to drain away the water that accumulated. When the pond once formed it remained there as a, permanent thing for the nineteen years preceding the drowning of plaintiffs' two boys. The pond remained there from 1901, when the fill was constructed, until March, 1920. Nothing was done by the defendant city to remedy the situation prior to the death of the boys.

The pond was fifteen feet deep in the middle. The surrounding neighborhood was a thickly populated residence district of the city. During all these years, it was a common practice for children in the neighborhood to play upon and about the pond, swimming in the pond in summer and playing on the ice in winter.

This dangerous condition was specifically reported to the City Engineer's office at the city hall by one of the neighbors fifteen or sixteen years before the drowning of plaintiffs' sons. The engineer's office promised that the matter would be attended to. It was impressed upon the engineer's office that it was an absolute necessity to have the pond drained on account of the danger to children and on account of the foul smell. In addition, one of the neighbors notified a city policeman about the matter.

Nothing was ever done, however, by the city authorities to rectify the dangerous condition prior to the drowning here in question.

Plaintiffs' boys were drowned on March 8, 1920, while playing upon the ice of the pond. The two boys were six years and seven months old at the time of their death. They came home from school at about three o'clock in the afternoon, and after getting something to eat and changing their clothes, went out to play, their mother at the time being engaged in preparing the evening meal. About fifteen or twenty minutes later a neigh-

bor boy came and reported to the mother that her two little boys were drowned in the pond. The pond was not in sight of plaintiffs' residence and neither of the plaintiffs knew of the existence of the pond.

An eyewitness, Earl Cook, testified to the drowning of the boys. This witness was walking east along the south sidewalk of Twenty-first Street at the time. When he first saw the boys they were playing on the ice, throwing a bottle across the ice. One of the boys was running after it and the other one was running after him, possibly eight or ten feet behind. The first little fellow went through the ice about midway of the pond, and the other one was running so close to him he could not stop and ran in after him. The second little boy clung with his fingers to the edge of the broken ice for a short space. In the meantime Cook immediately ran down the bank and ran in upon the ice, in the effort to rescue the boys. He got possibly half way from the bank to where the second little boy was clinging, when the ice broke and allowed Cook to go through. Both boys were drowned under his very eyes, but he was helpless to rescue them. The bodies of the boys were rescued from the water by the fire department by means of hooks and ropes.

The next day after the drowning, and two months before plaintiffs served any notice on the city of their intention to bring this suit, the city's claim department began taking numerous photographs of the pond. At the trial, however, the city made no attempt to excuse itself from the charge of negligence in creating this dangerous nuisance, and stood mute, offering no evidence whatever.

At the close of all the evidence the appellant asked a demurrer to the respondents' evidence, which the court refused, and counsel for the former duly excepted.

I. Counsel for appellant insist that the trial court erred in refusing its demurrer offered to respondents' evidence at the close of their case for the reason stated, that the pond was located wholly

Liability of City.

upon private property and that the accident did not result from any use of a street, and under all the facts there was no duty owing the deceased, and hence no liability rested upon the appellant.

In support of that contention counsel for appellant cite the following cases: Arnold v. St. Louis, 152 Mo. 173; Overholt v. Vieths, 93 Mo. 422; Moran v. Pullman Car Co., 134 Mo. 641; Kelly v. Benas, 217 Mo. 1; Hight v. Bakery, 168 Mo. App. 431; Buddy v. Terminal Ry. Co., 276 Mo. 276; State ex rel. Kansas City v. Ellison, 281 Mo. 667; Rallo v. Heman Const. Co., 291 Mo. 221, 236 S. W. 632; City of Omaha v. Bowman, 53 Neb. 293, 72 N. W. 316; Reeder v. City of Omaha, 73 Neb. 845, 103 N. W. 672; Murphy v. City of Brooklyn, 23 N. E. (N. Y.) 887; Von Almen's Admr. v. City of Louisville, 202 S. W. Ky. 880.; Peters v. Bowman, 47 Pac. (Cal.) 113; Tavis v. Kansas City, Kansas, 80 Kan. 547, 132 Pac. 185; Hooper v. City of Topeka, 92 Kan. 11, 139 Pac. 1018; Schouf's Admr. v. City of Paducah, 50 S. W. (Ky.) 42; Gillespie v. McGowan, 100 Pa. St. 144; Dehanitz v. City of St. Paul, 73 Minn. 385, 76 N. W. 48; Klix v. Nieman, 68 Wis. 271, 32 N. W. 223.

All of these cases proceed along the line that the appellant was not required to fence or otherwise protect nuisances or to secure dangerous places upon their private property from trespassers or other persons who might be thereon without the authority or permission of the respective owner thereof.

Generally speaking and as an abstract legal proposition those cases announce a correct legal proposition, but in my opinion they state the rule of law too broadly when applied to all cases, for the reason that there are often other facts and circumstances entering into the case which qualify or limit that harsh and unfeeling rule.

For instance in the case of the City of Hannibal v. Richards, 82 Mo. l. c. 336, "the construction of the embankment on Second Street by the city was subsequent to defendant's purchase of the lots and that embank-

ment prevented the flow of the water from the lots and occasioned its accumulation upon them, which, it is alleged, injuriously affected the health of the city. It has been repeatedly held by this court, that the owners of the lots under such circumstances could not maintain an action against the city for the damage to them, but that such injury is *damnum absque injuria*. Now, we are asked to hold, also, that the city may create a nuisance upon the lot of an individual and then have it abated at his expense, if he refuse to do it when ordered. As well at once declare that no one can acquire any rights to town or city lots which the municipal corporation is bound to respect. The city cannot create a nuisance upon the property of a citizen and compel him to abate it"—citing the case of Weeks v. City of Milwaukee, 10 Wis. 269.

The first case by implication held that the city owed the duty to the citizens of Hannibal and to Richards to abate that nuisance. In the case of State ex rel. Lamm v. Sedalia, 241 S. W. 656, this court held that a private person specially injured by a public nuisance may sue to abate it, and it would naturally follow that he could recover any special damages sustained caused by such nuisance. The State may also compel a municipal corporation to abate a nuisance. [State ex rel. Lamm v. Sedalia, supra.]

So in the case of Roth v. St. Joseph, 180 Mo. App. 381, the Kansas City Court of Appeals held that, where a city either by its own act or by permitting a railroad to erect an embankment in a street which creates, or suffers and permits, a stagnant pool to collect and become a nuisance near plaintiff's residence, the city is liable in damages, the same as any other person or landowner.

Likewise in the case of Salmon v. Kansas City, 241 Mo. l. c. 53, this court held that the city was liable for its contracts and torts in the prosecution of that work, and is open to suit in the same manner and to the same extent as a private person doing or causing to be

done the same work, and cited: Donahoe v. Kansas City, 136 Mo. 665; Dolan v. Laclede Gas Co., 145 Mo. 550; Ely v. City of St. Louis, 181 Mo. 723; State ex rel. v. Gates, 190 Mo. l. c. 550; Barree v. Cape Girardeau, 197 Mo. l. c. 389; Broadwell v. City of Kansas, 75 Mo. 213; Werth v. City of Springfield, 78 Mo. 107; Wegmann v. City of Jefferson, 61 Mo. 55; Thurston v. City of St. Joseph, 51 Mo. 510.

II.  Counsel for appellant insist that this case was brought and tried upon the theory of the turn-table cases. In my opinion this is a clear misconception of the case. The turn-table cases turn upon the theory that the defendants in such cases construct those dangerous devises upon their own premises, which are so attractive to children that they enter the premises and while playing on them they are injured thereby. Because of the attractions of the turn-table, and the absence of any special danger appearing to the child, the injury is unexpectedly inflicted upon it, and out of this lure to the unsuspecting child arises the duty of the proprietors to so guard the tables that no injury can reasonably happen to it.

*Turn-table Theory.*

But that is not this case. Here the officers of the city and its agents should be reasonably charged with the knowledge of such facts as all other reasonably prudent men know, and that is that ponds of water in the thickly populated portions of large cities are attractive to children, and that is why they congregate there in summer for bathing in the waters, and in winter for skating on the ice formed thereon. It is common knowledge that ponds of water wherever located are highly attractive to children, both for skating and bathing purposes, as much so as the old creek down over the hill in the meadow we all read so much about, both in verse and fiction.

The same instinct and desire for pleasure induces the tourists of the country to resort to the seashore for bathing, and the more hardy to travel to the northern

ice-fields for skating and tobagganing. The law imposes the duty upon the keepers of. our own resorts, as well as upon the keepers of the others, to make them reasonably safe for those who use them. In other words, all reasonably prudent persons must so use their property as not to unreasonably injure others, and if that duty is not exercised, then they are liable for its violation. In the case at bar the city unreasonably constructed the dam or fill across Twenty-first Street and thereby caused a large body of surface water to accumulate, covering some eight city blocks, right in the heart of the city, varying in depth from a few inches near the edges thereof, to twelve or fourteen feet in depth in the center, thereby making it a regular death trap for children. The only wonder is that there were not dozens of them drowned therein during the many years that it existed.

The legal obligation rests upon all who create or allow such dangerous conditions to use reasonable precautions to see that no unnecessary injury shall flow therefrom to others, and if that duty is violated and injury results the guilty party will be held liable in damages.

This was the principle upon which the decision in Godfrey v. K. C. Light & Power Company, 299 Mo. 472, was based, and correctly so, if it had had any substantial facts upon which to rest. There the majority opinion held that a little crooked walnut tree was an attractive place for children to congregate, and therefore the company should have known that fact and have insulated its wires. To that part of the opinion I dissented and still dissent. I doubt that if there is a single man or woman who reads that opinion who ever saw children climbing such walnut trees out in an open pasture, while with the ponds there is no one of common observation but who continually sees children flocking to the ponds of the country to swim or skate. On that account the wonder is that they have not been a more fruitful source of death and litigation, than they have been.

III.   It is also insisted by counsel that the deceased children were trespassers at the time they lost their

Trespassers. lives, and therefore the parents are barred from a recovery in this case. This point was decided against that contention in the Godfrey case, supra; but independent of that, I do not think that there was in fact any trespass whatever in this case, or anything that smacks of trespass. Common observation has long ago taught us that when a man or set of men turn out their lawn for public pasture or playgrounds, or flood it with water for swimming or skating purposes, it would be hard to say that those who use it are trespassers or can be held liable for such violation of the law. It is like the case of pedestrians walking along a railroad track in violation of the statute, and where there is no actual objection made thereto. This court and all others of the State have repeatedly held that the pedestrians become licensees and not trespassers. I think the same is true in this case. The idea of these little innocent boys, hardly old enough to know what they were doing, being guilty of trespass, which would bar the parents' right of a recovery, when neither they nor the lot owners ever thought of such a thing, is shocking to the human intelligence. [Williams v. Gas. Co., 274 Mo. 1; Day v. Ice Co., 136 Mo. App. l. c. 275; Beckwith v. City of Malden, 253 S. W. 17.]

The above cases lend color to the foregoing observations. Also, the case of Beckwith v. City of Malden, 253 S. W. 1, holds that the city must anticipate the proclivities of boys to climb trees.

IV.   Counsel for appellant next insist that the city was not liable for the death of the boys because they were drowned on private property and Nuisance: therefore it had no power to abate the Abatement: Private Property. nuisance. In my opinion this insistence is untenable for the reason the record shows that the fill or dam was constructed by the city within the limits of Twenty-first Street and flush up with the lateral lines thereof. Under that state of facts there was nothing to prevent the city from making a drain

through or under the dam. By going upon the fill or dam and opening a culvert through it, the city could have thereby easily and inexpensively drained all the surface water from the pond, and that too, long before the boys were drowned.

. The authorities cited under Paragraph I of this opinion hold it to be the legal duty of a municipal corporation to abate such a nuisance as this one was and that it is liable in damages for all injury sustained. in consequence thereof.

V. This case is in some respects like the case of Capp v. St. Louis, 251 Mo. 345. In that case there was **Other Cases.** a deep pool of water in a large creek or small river in Forest Park which had been caused by the city emptying a storm sewer into the creek which dug out or excavated the hole in which the water accumulated; and while playing in the creek the child stepped into the deep pool and was drowned. In that case we held the pool was an attractive place for children and a public nuisance, and should have been abated by the city. The record showed the city was negligent in that regard, which negligence resulted in the death of the child, and it was therefore liable for the damages sustained by the child's parents.

In the case of Jensen v. Kansas City, 181 Mo. App. 359, ELLISON, J., again considered the Capp case, supra, and in so doing said:

"In the latter case, it was held that children playing in parks were not trespassers and the court said, in effect, that they were the invitees of the city. There a child, with a companion, was wading in a pool, shallow at the edge, but several feet deep towards the center, and practically unguarded. The question of the city's negligence was held to be for the jury.

"In this case the low wall, or balustrade, twenty-five inches high, was the only guard, and it, of course, was no protection, once a child was on top of it, against the·water in the basin of the fountain. The wide coping

which topped this wall was a great temptation to children to run around it. We think it too extreme to say, as was suggested in argument, that a boy five years old could not climb onto the top of a wall of that height without assistance. The trial court was right in submitting the case to the jury.''

The Supreme Court of Nebraska in the case of City of Omaha v. Richards, 49 Neb. 244, held: ''That the city is liable for the death of a boy ten years old, by drowning, caused by falling from a section of wooden sidewalk which he was using as a raft upon a pond of water within the corporate limits, a part thereof being in a public street and part upon private property, it being shown that such accumulation of water was occasioned by the negligence of the city in grading said street and constructing a storm sewer therein.''

The following cases also announce the same principle of law: Daneschocky v. Sieble, 195 Mo. App. 470; Harrison v. K. C. Light Co., 195 Mo. 623; Buckner v. Horse & Mule Co., 221 Mo. l. c. 709-711; Obermeyer v. Chair Co., 229 Mo. l. c. 111; Kupferle v. Ry. Co., 275 Mo. l. c. 457; Washburn v. Light Co., 202 Mo. App. l. c. 116; Thompson v. City of Slater, 197 Mo. App. 247; Hudson v. Power Co., 234 S. W. l. c. 871; Shafir v. Sieben, 233 S. W. 420; Hegberg v. Ry. Co., 164 Mo. App. 514.

VI.   There was no error in the instructions given for the respondent telling the jury to find that the pond in question was attractive for children; that is true, yet the doctrine of the turn-table cases has nothing to do with the principles of law underlying this case, but independent of that the instruction was still sufficient, in that they required the jury to find the pond was dangerous and that the city knew, or should have known, it in time to rectify the dangerous condition.

Instruction.

VII.   The judges who agree that there should be a recovery by plaintiffs in this case, further agree that the

amount of recovery (under previous rulings) should not exceed $5,000. It is therefore adjudged that if plaintiffs will remit the sum of $5,000; as of the date of the original judgment, then the remainder of such judgment ($5,000) will be affirmed as of the date of the original judgment. The *remittitur* is to be made within ten days, and if not so made then the judgment is to be reversed and remanded. *Walker, White* and *Ragland, JJ.,* concur; *Graves, C. J.,* and *David E. Blair* and *Atwood, JJ.,* dissent, on the ground that there is no liability; *Graves, C. J.,* in an opinion filed, in the result of which *Atwood, J.,* concurs.

GRAVES, C. J. (dissenting).—Plaintiffs, in this action, sue for damages occasioned to them by the death of one of two twin boys, aged six years and seven months, when both were drowned in a pond on March 8, 1920.

In the afternoon of that day the two boys, Karl and Kenneth, came home from school in the afternoon about 3:15 or 3:30 o'clock, and after changing clothes left and were next seen upon a pond just south of Twenty-first Street and between Bales Avenue and Askew Street. There was an inch or more of ice upon the pond, and the boys were seen playing with a bottle upon the surface of the ice—one running after the other. Near the deeper portion of the pond the ice gave way and the child in front sank under, immediately followed by his brother. Their pictures are in the record, and it is easily discernible that they were both bright little fellows, as the evidence tends to prove. The present action is for the death of Karl E. Davoren. From the evidence Twenty-first Street runs east and west, and Bales Avenue and Askew Street run north and south, intersecting and crossing Twenty-first Street. There was no intervening street between Bales Avenue and Askew Street. They, as well as Twenty-first Street, are public highways in Kansas City, Missouri. The negligence is thus charged in the petition:

"That on the 8th day of March, 1920, about 3:45 o'clock P. M. said Karl E. Davoren was playing upon the

ice upon a pond of water located on the south side of Twenty-first Street between Bales Avenue and Askew Street in Kansas City, Missouri, same being the only pond on the south side of said street between Bales and Askew. That the ice upon said pond broke and allowed said Karl E. Davoren to fall through the ice into the water of said pond, as a direct result of which he was then and there drowned and came to his death.

"The said pond was created and caused directly by the damming up and accumulation of surface water directly caused by the negligence of the defendant in constructing and maintaining a high grade and fill on Twenty-first Street at this place, and in failing to provide and maintain a sufficient culvert or other outlet therein to allow said surface water to escape; that said pond constituted a nuisance and created a condition attractive to children and dangerous to children and others, and that the defendant knew or by the exercise of ordinary care should have known all of said facts, circumstances and conditions in time so that by the exercise of ordinary care said conditions could have been averted, rectified and remedied and the death of said child averted."

Damages were sought in the sum of $10,000. The answer was a general denial. Plaintiffs had a verdict for $10,000, and from the judgment entered upon such verdict defendant has appealed. It appears that about twenty years ago Kansas City improved Twenty-first Street, and in doing so constructed or made a fill some twenty feet high for a distance of 150 feet, between Bales Avenue and Askew Street. There was a gulch or ravine coming in from the south, and the topography of the lands south of Twenty-first Street was such that the water accumulated and formed a lake of considerable dimensions, and in the deeper portions (near this embankment upon which the traffic way and sidewalks on Twenty-first Street were constructed) the water was twelve to fifteen feet deep. It stands admitted in the record that the whole of this lake was upon private prop-

erty, and no portion thereof in the street, or upon city property. Details will be left to the opinion.

I.   In this case the evidence in the bill of exceptions is printed in full, giving both questions and answers. In other words, the evidence is not given in narrative form. Motion was filed by respondents to dismiss the appeal for this reason. The motion to dismiss was overruled before the argument of the cause, and for reasons which we afterward expressed in Frohman v. Lowenstein, 303 Mo. 339, when such case was determined by Court in Banc.

*Abstract,*

II.   It is hard to eliminate from the mind the bright faces of those two little boys, and the writing of the cold law of this case is thereby rendered no easy task. Appellants contend that the theory of the petition puts the case within the "turn-table cases" rule. Respondent denies this, in the face of the instruction which required the jury to find every element of the so-called turn-table doctrine. The allegation in the petition we have set out in the statement, but we quote the earmarking clause here, thus: "that said pond constituted a nuisance and created a *condition attractive to children* and dangerous to children and others, and that defendant knew," etc.

*Turn-table Doctrine.*

The instruction requires the jury to find the foregoing pleaded fact, so that both by pleading and instruction, this trial proceeded upon the turn-table case theory. At the expense of brevity, we set out the instruction:

"If you believe and find from the evidence that on the 8th day of March, 1920, about 3:45 o'clock P. M., Karl E. Davoren was playing upon the ice on a pond of water located on the south side of Twenty-first Street between Bales Avenue and Askew Street in Kansas City, Missouri; and that the ice on said pond broke and allowed said Karl E. Davoren to fall through the ice into the water of said pond, and that as a direct result thereof he came to his death by drowning; and if you further find

that there was a high fill on Twenty-first Street at said place; and that the defendant city constructed and maintained said fill without providing an outlet therein reasonably sufficient to allow *surface water to escape,* and that the defendant city was thereby guilty of negligence (if you so find); and that said pond was directly caused by the damming-up and accumulation of *surface water by said fill* (if you so find); *and if you further find that said pond created a condition attractive and dangerous to children, and that the defendant city knew, or by the exercise of ordinary care should have known, all of the facts, circumstances and conditions herein submitted,* relating to said fill and to said pond and the danger thereof (if you so find) in time so that by the exercise of ordinary care said dangerous condition (if you so find) could have been averted, rectified and remedied by providing a reasonably sufficient outlet in said fill to allow surface water to escape; and that the death of said Karl E. Davoren would thereby have been averted; and if you further find that Karl E. Davoren was at and before the time of his death an unmarried minor; that plaintiffs were at the time of said death, and are now, husband and wife, and the father and mother respectively of said Karl E. Davoren, and as such had the custody of said minor child; and if you further find that the death of said child directly resulted from negligence of the defendant city as herein submitted (if you find the defendant city was negligent as herein submitted), and that plaintiffs have sustained damages as a direct result of the death of their said son, then you are instructed by the court that you should return a verdict in favor of the plaintiffs and against the defendant."

We have italicized several pertinent facts in this instruction, (1) the portion pertaining to surface water, which will be material upon another point, and (2) that part which expressly submits the *turn-table doctrine.* The turn-table cases proceed upon the theory that it is negligence to maintain (unguarded, unprotected and insecure) a turn-table or similar instrumentalities which

are attractive to children of tender years, and immature minds. The petition in this case pleads the maintenance of "a condition attractive to children," and asks relief as in the turn-table cases. The instruction covers the same matter, thus showing that the pleader, by instruction, gave that construction to his own pleadings. In this situation it cannot be urged that this portion of the petition is surplusage. Each and every allegation of the petition was submitted by the instruction. The petition charged that this "condition," "attractive to children," was created and maintained by the defendant. Whatever may have been the intent of the pleader, his language was unfortunate, and we have a case where there is an attempt to recover upon the turn-table-case doctrine. The instruction given construes the pleading. But it is urged that there could be no turn-table doctrine in the case, because the "condition attractive to children" was not upon the city's property. There is language in Williams v. Gas and Electric Co., 187 S. W. l. c. 557 (Springfield Court of Appeals), which lends support to this idea. When that case reached this court (274 Mo. 1) there was no approval of that langauge used by the Court of Appeals. While the cases involving the doctrine usually are cases where the inhibited structure is upon the premises of the defendant, yet it by no means follows that an inhibited structure might not be wrongfully erected and maintained by defendant upon the premises of another, and without leave or license from such other, and the turn-table rule would apply. A turn-table itself might be placed upon property not owned by defendant, and without leave or license from the owner of the premises. The pleadings and the instructions in the instant case show a clear attempt to make a case under the turn-table doctrine. The facts do not bring it within the rule, and the demurrer to the evidence should have been sustained. [Overholt v. Vieths, 93 Mo. 422; Arnold v. City of St. Louis, 152 Mo. 173; Moran v. Pullman Car Co., 134 Mo. 641; Kelly v. Benas, 217 Mo. 1; Buddy v. Union Terminal Ry. Co., 276 Mo. 276; State ex

rel. v. Ellison, 281 Mo. 667; Rallo v. Construction Co., 291 Mo. 221.]

This court has persistently refused to extend this doctrine of negligence. [Kelly v. Benas, 217 Mo. l. c. 13; State ex rel. v. Ellison, 281 Mo. l. c. 680 et seq.]

In no instance have we ruled facts such as we have here to be within the rule. There are, however, other features in this case which preclude recovery. Of these next.

III.    As indicated in our statement there was a draw such as would gather the surface water and cast

Surface Water:
Negligence.

it upon Twenty-first Street on its way northward. The respondents' learned counsel concede the water to be surface water, in the instruction set out above. The topography of the country was such that from several directions the surface water ran to this lower portion of the land (draw) and was cast upon and across Twenty-first Street. It was by pleadings, evidence and instructions, treated and accepted to be surface water. The alleged negligence of the city must be measured by its rights to both build and protect its streets. Surface water in Missouri is a common enemy and the landowner has the right to protect his property from its depredations, although in so doing the water may be cast upon the land of another. [Goll v. Railroad, 271 Mo. l. c. 667 et seq., and cases therein cited and discussed.]

In this case the city had such rights in Twenty-first Street, that it could construct it in such manner as to make a proper roadway, and make its embankment of such height as to protect it from surface water. In so doing it was guilty of no act of negligence. In changing the grade of its street, it became liable in damages to adjoining property owners, but such right to damages is not based upon negligence. There can be no negligence in doing what the city had the legal right to do. The damages in condemnation proceedings are based upon

taking or damaging private property for public use, and not upon negligence.

The city in its fight against surface water and for the protection of its street had the legal right to raise the level of the property under its control, and having such legal right could not be guilty of negligence in doing the act. A legal right is a lawful thing. The city did not have to provide waterways through or over its property in the disposition of surface water. [See authorities, supra.] The Missouri rule as to surface waters is the common-law rule, and not the civil law rule, and for this reason we need not go beyond our own case law. The evidence in the case, under this rule of law, shows no negligence and hence no liability.

IV. Divers lines of cases are cited and elaborated upon by learned counsel upon both sides of the case.

Ponds on Private Property. We shall not pursue their thoughts, when the solution of the case is one of such simple application of firmly fixed rules. Running through it all is the legal right of the city (under our rulings) to construct a solid embankment on its road way, and therefore there was no negligence in so constructing and maintaining it. Then viewing it from another angle, and supposing that the owners of the lands south of Twenty-first Street where this pond was made, had themselves built such an embankment and made this pond on their own land, just as it is now, except the embankment would have been constructed further to the south rather than upon the roadway of the city, would the landowners be liable? Most certainly not under the cases cited under our Point II, supra. If the city paid the assessed damages to, or became liable for damages to these property owners for damaging their property by raising the natural grade of the street, it (in a sense) paid for the privilege of constructing a pond of surface water on this private property, and would be no more liable than the private owners for the maintenance of the pond.

Suppose the city in its private business or proprietary capacity owned a lot or tract of ground within the city, and for some lawful purpose and use built a pond thereupon, would it be liable for children who might be submerged therein? We think not. In such capacity the city (although a corporate body) would stand before the law just as an individual. It might need a pond to run a municipal light or water plant, or some other things, not done in a governmental capacity. The maintenance of a pond of water upon private property has not been declared negligence in Missouri. It must not be overlooked that this pond was not in a street, or upon city property. So that we can see no theory upon which the recovery in this case can be permitted to stand, much as we would like to see the parents compensated for the loss of these two bright little fellows. The judgment should be simply reversed. I file the foregoing opinion written by me for Division One as my dissent in Court in Banc. *Atwood, J.*, concurs in the result of these views.